UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENWOOD DIVISION

| | |
|---|---|
| DOUGLAS TURNER, | ) Civil Action No.: 8:20-cv-04115-BHH |
| | ) |
| Plaintiff, | ) **MEMORANDUM OF LAW IN** |
| | ) **SUPPORT OF MOTION TO DISMISS** |
| v. | ) **BY DEFENDANTS NEXSTAR** |
| | ) **BROADCASTING, INC. AND** |
| | ) **NEXSTAR MEDIA GROUP, INC.** |
| NEXSTAR BROADCASTING, INC., | ) |
| NEXSTAR MEDIA GROUP, INC., and | ) |
| JOHN/JANE DOE, | ) |
| Defendants. | ) |

Defendants Nexstar Broadcasting, Inc.[1] ("NBI") and Nexstar Media Group, Inc. ("NMGI") (collectively, "Defendants") respectfully submit this memorandum of law in support of their Motion to Dismiss.

## SUMMARY OF ARGUMENT

South Carolina government online arrest and detention records for Demarcus Tavon Blocker mistakenly displayed the mugshot photo of Plaintiff Douglas Turner instead of the mugshot of Mr. Blocker. In reliance on these records, television station WSPA, which is owned and operated by Defendant NBI, unknowingly broadcast this incorrect photo when reporting on

---

[1] Recently renamed Nexstar Inc.

the arrest of Mr. Blocker. (Mr. Douglas' name and other identifying information was not used in the broadcast, just his photo.)

Plaintiff filed this suit for defamation and related causes of action against Defendants[2] stemming from WSPA's report – even though prior to Plaintiff filing this suit Defendants advised counsel for Plaintiff of the inaccuracy of the government records on which WSPA/Defendants relied[3] and WSPA removed Plaintiff's mugshot from its website and social media posts immediately after WSPA was made aware of the inaccuracy.

The "fair report" privilege to defamation claims protects Defendants' reliance on the inaccurate government records. This Court may take judicial notice of the inaccurate government records, and may (and should) dismiss this case in response to this Motion to Dismiss. Such a dismissal was granted in similar circumstances by this District in <u>Cobin v. Hearst-Argyle Television, Inc.</u>, 561 F.Supp.2d 546 (2008). It is not necessary to wait for summary judgment or trial.

Plaintiff's non-defamation claims should also be dismissed. The gravamen of Plaintiff's case is defamation. Plaintiff's other causes of action are merely derivative of the defamation claim – an attempt to make an "end run" around the "fair report" privilege and other constitutional protections afforded to the media against defamation claims. Accordingly, they

---

[2] Defendants contend that Defendant NMGI is not a proper party to this case, as it is merely the parent company of Defendant NBI and does not directly own or operate WSPA. Nonetheless, since the Complaint accuses Defendant NMGI of wrongdoing in conjunction with NBI, NMGI joins in this motion. NMGI does not, however, admit by joining in this motion or use of the term "Defendants" in this motion that it participated in any of the actions attributed to it by Plaintiff.
[3] The government records have now been updated to display Mr. Blocker's photo instead of Plaintiff's (presumably at the request of Plaintiff's counsel after Defendants made him aware of the situation). The original records are included as exhibits to this memorandum.

should also be dismissed. Moreover, several of Plaintiff's derivative causes of action also fail for independent reasons – such as the claim for "false light," which is not a recognized cause of action in South Carolina.

Plaintiff cannot amend his Complaint to plead any facts that would not be dismissed under the "fair report" privilege or for the other reasons set forth herein. Accordingly, Defendants respectfully request that this case be dismissed in its entirety with prejudice.

## PLAINTIFF'S COMPLAINT

Plaintiff's Complaint attacks news stories that were broadcast by WSPA and posted on the station's website and social media accounts. The Complaint alleges that Defendants defamed Plaintiff by including his mugshot photo accompanying a report of the arrest of another man – Demarcus Tavon Blocker of Greenwood, South Carolina – on six charges connected to the solicitation of a minor. Portions of WSPA/Defendants' news stories are attached to the Complaint as exhibits and incorporated therein. As can be seen in the exhibits and the Complaint, WSPA/Defendants' only alleged error was including Plaintiff's mugshot instead of Blocker's in the stories. Plaintiff's name was not used in the stories.

Plaintiff's Complaint states two causes of action for defamation (per se and per quod) and lists five additional causes of action stemming from WSPA's use of Plaintiff's photo in WSPA's stories: outrage, negligence/gross negligence/recklessness, wrongful publication of private affairs, wrongful appropriation of personality, and false light.

## THE GOVERNMENT RECORDS

WSPA accessed the photo of Plaintiff when it searched government public records and retrieved the information about Blocker's arrest and detention. Plaintiff's mugshot photo was

substituted for Blocker's in the government records under the name and arrest/detention information of Blocker.  The station then used the photo in good faith, based on the implied assurance that the photo was of Blocker.

The government records in which WSPA found the incorrectly identified photo of Plaintiff were the online records of the South Carolina Statewide Automated Victim Information and Notification system (SC SAVIN).  The SC SAVIN system (also sometimes referred to as "SC VINE") is accessed through its government website, SAVIN.SC.gov, and its inmate searches are powered by VINELink for display on vinelink.com (VINELink powers similar inmate search services on behalf of many state agencies across the country).  Attached as Exhibits 1-7 hereto are screenshots of the steps of the SC SAVIN inmate search for Demarcus Tavon Blocker that yielded the photo of Plaintiff as incorrectly displayed in the SC SAVIN/vinelink.com government records under Demarcus Tavon Blocker's name (the steps are described in footnote 4 herein).[4] The  inclusion of these exhibits is solely for the purpose of

---

[4] The SC SAVIN / SC VINE records search that (until recently) yielded the display of Plaintiff's mugshot with Demarcus Tavon Blocker's arrest and detention information begins at SC SAVIN's official government website, http://savin.sc.gov/ (Exhibit 1).  There, the user follows the instructions to "Go to the VINELink website at https://www.vinelink.com/vinelink/initMap.do and click on South Carolina" (Exhibit 1).  The user is then transitioned to a webpage at https://vinelink.com/#/home, where the user is asked to "Please Select Your State of Interest" (South Carolina) (Exhibit 2).  The user is then taken to webpage https://vinelink.com/#/home/site/41000 where the user clicks on the "FIND AN OFFENDER" icon (Exhibit 3).  The user is then prompted to type in the Offender's First and Last Name and then click "Search" on webpage https://vinelink.com/#/search (Exhibit 4).  The resulting webpage, https://vinelink.com/#/searchResults/1, displays Demarcus Tavon Blocker's name, detention location (Greenwood County Detention Center), and some additional information (Exhibit 5).  When the user clicks on "More Info," additional information about Blocker is displayed, including his Offender ID and his date of birth (Exhibit 6).  Clicking on the link to "Show Photo" on this page displays the same mugshot photo that WSPA/Defendants used in their news stories at issue in this case (Exhibit 7), as can be seen in the exhibits attached to

illustrating the government information publicly available in the SC SAVIN system. The display of this data, including the photo of Plaintiff, is a public record of which the Court may take judicial notice.[5]

## MOTION TO DISMISS STANDARD

"Under Federal Rule of Civil Procedure 12(b)(6), a motion to dismiss for failure to state a claim should not be granted unless it appears certain that the plaintiff can prove no set of facts which would support its claim and would entitle it to relief. In considering a motion to dismiss, the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." Cobin, 561 F.Supp.2d at 549-550 (quoting Mylan Laboratories, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993)).

The Federal Rules of Civil Procedure require, however, that a plaintiff plead "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "In other words," the Fourth Circuit has explained, "the complaint's factual allegations

---

Plaintiff's Complaint. According to Plaintiff's Complaint, this is a photo of Plaintiff -- not Demarcus Tavon Blocker.

[5] Several courts, including the District of South Carolina, have taken judicial notice of content on vinelink.com as official reports of detentions, including details of alleged crimes and personal details about defendants. See, e.g., Roberts v. Lewis, No. 2:17-cv-453-RMG-MGB, 2017 U.S. Dist. LEXIS 175097, *9 n.4 (D.S.C. Sep. 25, 2017), pet. dismissed, 2017 U.S. Dist. LEXIS 175684 (D.S.C. Oct. 20, 2017) (citing vinelink.com as verification that a party is incarcerated); Stout v. Duall, No. 5:15-CT-3078-BO, 2015 U.S. Dist. LEXIS 119241, at *1 (E.D.N.C. Sep. 7, 2015) (same). See also, Plain Law v. Pierce, No. 19-924 (MN), 2020 U.S. Dist. LEXIS 216800, at *5 n.3 (D.Del. Nov. 19, 2020) (using vinelink.com to determine detainee's release date); Loyden v. Vannoy, 2020 U.S. Dist. LEXIS 221153, at *4 (W.D.La. Nov. 5, 2020) (using vinelink.com to determine detainee's age). Courts can take judicial notice of police reports and similar records without converting a motion to dismiss into a motion for summary judgment. See, e.g., Cobin v. Hearst-Argyle Television, Inc., 561 F. Supp. 2d 546, 550-51 (D.S.C. 2008).

must produce an inference of liability strong enough to nudge the plaintiff's claims 'across the line from conceivable to plausible.'" Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 256 (4th Cir. 2009) (quoting Iqbal, 556 U.S. at 683). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 258 (quoting Iqbal, 556 U.S. at 678). Although this case was initially filed in South Carolina state court, "[a] district court applies the federal pleading standard to all removed claims, including claims brought under state law." Shaffer v. City of S. Charleston, No. 2:13-cv-12450, 2014 U.S. Dist. LEXIS 37179, at *8 (S.D. W.Va. Mar. 21, 2014); accord Christiansen v. W. Branch Cmty. Sch. Dist., 674 F.3d 927, 938-39 (8th Cir. 2012); Kearns v. Ford Motor Co., 567 F.3d 1120, 1125 (9th Cir. 2009) ("It is well-settled that the Federal Rules of Civil Procedure apply in federal court, irrespective of the source of the subject matter jurisdiction, and irrespective of whether the substantive law at issue is state or federal.") (internal quotations and citation omitted). See also Fed. R. Civ. P. 81(c)(1) (providing that the Federal Rules of Civil Procedure apply to civil actions removed from state court).

"[C]ourts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007).

## ARGUMENT

As in the Cobin v Hearst-Argyle case previously decided by this District, the "fair report" privilege precludes Plaintiff's defamation claims from surviving this motion to dismiss. Plaintiff's other claims must also all fail, since the gravamen of the case is defamation, and

Plaintiff's other claims are merely an attempt to make an "end run" around the "fair report" privilege and other constitutional protections afforded to media defendants in defamation cases.

Plaintiff's "outrage," "wrongful publication of private affairs" and "wrongful appropriation" claims also fail for the additional reason that Plaintiff has not pled and cannot plead plausible facts to support them; and Plaintiff's "false light" claim fails not only because it is an attempted "end run" around the "fair report" privilege, but also because South Carolina does not recognize this cause of action independently from defamation.

Since Plaintiff cannot cure any of these defects by re-pleading, Defendants respectfully request that Plaintiff's claims and his entire Complaint be dismissed with prejudice.

**1.     Plaintiff's Defamation Claims Should Be Dismissed Because WSPA's Publication of Plaintiff's Photo Was Privileged as a "Fair Report" of a Public Record**

"The fair report privilege shields news organizations from defamation claims when publishing information based upon government reports or actions." Cobin v. Hearst-Argyle, 561 F.Supp.2d at 550. "The privilege is an exception to the 'republication rule' which states that 'one who repeats a defamatory statement is as liable as the original defamer.' The fair report privilege, therefore, protects the reporting source if the contents of the governmental record ultimately proves defamatory itself." Id. (citations omitted).

The privilege protects those who accurately report the substance of governmental actions or records, even if what was stated in the public record or proceeding turns out to be false and defamatory. Id. at 554. The "[fair report] privilege consists of making a fair and substantially true account of the particular proceeding or record." Padgett v. Sun News, 278 S.C. 26, 31, 292 S.E. 2d 30, 33 (1982). As long as the report is a fair and accurate summary of the governmental

record or action, the individual or entity reporting on it does not have to investigate the underlying truth of the matter, and may not he be held liable for defamatory errors or false information in the official document(s) that the reporter is repeating. See Reuber v. Food Chemical News, Inc., 925 F.2d 703, 712 (4th Cir. 1991) (en banc) ("The fair report privilege encourages the media to report regularly on government operations so that citizens can monitor them. In return for frequent and timely reports on governmental activity, defamation law has traditionally stopped short of imposing extensive investigatory requirements on a news organization reporting on a governmental activity or document."); Cobin, 561 F.Supp.2d at 554; Padgett, 278 S.C. at 33, 292 S.E. 2d at 34 ("[O]ur decision in Lybrand v. The State Co. [179 S.C. 208, 184 S.E. 580 (1936)] … completely refutes the contention that the publisher is required to go behind the allegations contained in the public record"); see also Cruse v. Frabrizio, No. 3:13-cv-18768, 2014 U.S. Dist. LEXIS 90997, at *10 (S.D.W.Va. Apr. 7, 2014) (magistrate) ("Because the fair report privilege applies, barring Plaintiff's claim, the truth or falsity of the information in the article essentially becomes irrelevant."), adopted, Cruse v. Frabrizio, No. 3:13-18768, 2014 U.S. Dist. LEXIS 90107 (S.D. W. Va. July 2, 2014). Accord, Garrard v. Charleston Cnty. Sch. Dist., 429 S.C. 170, 191-92, 838 S.E.2d 698, 709 (Ct. App. 2019); Rushford v. New Yorker Magazine, Inc., 846 F.2d 249, 254 (4th Cir. 1988). See also Restatement (Second) of Torts § 611 cmt. b (2002) ("The [fair report privilege] permits a person to publish a report of an official action or proceeding or of a public meeting that deals with a matter of public concern, even though the report contains what he knows to be a false and defamatory statement.").

    This privilege has long been recognized under South Carolina law – both under the

common law and as a constitutional protection under the First Amendment – and has been expressly adopted by the Fourth Circuit. See Chapin v. Knight-Ridder, Inc., 993 F.2d 1087, 1097 (4th Cir. 1993) (common law and constitutional);[6] Reuber v. Food Chemical News, Inc., 925 F.2d 703, 712 (4th Cir. 1991) (en banc) (common law and constitutional); Lee v. Dong-A Ilbo, 849 F.2d 876, 878 (4th Cir. 1988), cert. denied, 489 U.S. 1067 (1989) (common law); Padgett, 278 S.C., at 35, 292 S.E. 2d at 35 (1982) (common law and constitutional);[7] McClain v. Arnold, 275 S. C. 282, 285, 270 S.E. 2d 124, 125 (1980) (common law); Jones v. Garner, 250 S.C. 479, 487, 158 S.E. 2d 909, 913 (1968) (common law); Lybrand v. State Co., 179 S.C. 208, 218, 184 S.E. 580, 584 (1936) (common law); Oliveros v. Henderson, 116 S.C. 77, 106 S. E. 855, 860 (1921) (common law).

An arrest by a law enforcement officer is an official government action, as is the detention of an arrestee in a government jail. And governmental reports of the arrest and detention – whether on paper or online[8] – are government records subject to the "fair report" privilege. See, e.g., Restatement (Second) of Torts, § 611 cmts. h (record of arrest), d (record of any action by a government official).

---

[6] In Chapin, the court stated that "This [fair report] rule was strengthened and given constitutional mettle" in Greenbelt Cooperative Publishing Ass'n v. Bresler, 398 U.S. 6 (1970), and Time, Inc. v. Pape, 401 U.S. 279 (1971). Id.

[7] Justice Ness noted that the privilege was given constitutional protection in Cox Broadcasting Corp. v. Cohn, 420 U.S. 469 (1975). See Padgett, 278 S.C. at 38, 292 S.E. 2d at 37 (Ness, J., concurring).

[8] South Carolina law specifically provides that electronic records created by government agencies are public records. See S.C. Code § 30-4-20(c) ("'Public record' includes all books, papers, maps, photographs, cards, tapes, recordings, or other documentary materials *regardless of physical form or characteristics* prepared, owned, used, in the possession of, or retained by a public body") (emphasis added). See also S.C. Code § 30-4-30(A)(1) ("A person has a right to inspect, copy, or receive an electronic transmission of any public record of a public body … .)

The report regarding the detention of Blocker, including the photo of Plaintiff, was a government report of the detention, on a site designated by the government and regularly used to provide access to such reports. There is a direct link to the vinelink.com site on the website for the South Carolina Statewide Automated Victim Information and Notification Program (SC SAVIN), in order to "allow crime victims, law enforcement officers, and concerned citizens to use the [vinelink.com] system to search for an offender …" (http://savin.sc.gov/; see Exhibit 1).

On its "Frequently Asked Questions" page, the SC SAVIN website states that "[e]very 15 minutes, updated data is collected from booking and offender management systems, and transmitted to a secured central database. This information is then searchable by: … Internet – vinelink.com." (http://savin.sc.gov/faqs.html; see Exhibit 8 filed herewith.[9]) SC SAVIN's FAQs add that "SC SAVIN monitors offenders who are in South Carolina state prisons and county detention facilities, those who are under community supervision with the SC Department of Probation, Parole and Pardon Services or in the custody of the SC Department of Juvenile Justice." (Exhibit 8.) This language reinforces that the arrest and detention records (including mugshots) displayed on the SC SAVIN / vinelink.com system are government records.

The posting of these detention reports to vinelink.com does not strip these reports of their nature as public government reports of those detained at the Greenwood County Detention Center. As noted above, several courts, including the District of South Carolina, have taken judicial notice of posts to vinelink.com as official reports of detentions. See, e.g., Roberts v. Lewis, No. 2:17-cv-453-RMG-MGB, 2017 U.S. Dist. LEXIS 175097, *9 n.4 (D.S.C. Sep. 25,

---

[9] Defendants ask that this Court also take judicial notice of this page of this South Carolina government website.

2017), pet. dismissed, 2017 U.S. Dist. LEXIS 175684 (D.S.C. Oct. 20, 2017) (citing vinelink.com as verification that a party is incarcerated); Stout v. Duall, No. 5:15-CT-3078-BO, 2015 U.S. Dist. LEXIS 119241, at *1 (E.D.N.C. Sep. 7, 2015) (same).

This Court may take judicial notice of these records and rule in Defendants' favor on a motion for dismissal under FRCP 12(b)(6) without converting the motion to one for summary judgment. Cobin, 561 F.Supp.2d at 550-551.[10]

Since the report of the detention of Blocker on SC SAVIN/vinelink.com is a public government record, Defendants' fair and accurate reporting of the contents of that record is protected by the "fair report" privilege. See, e.g., Cobin, at 558.

Even if the posting is considered a public announcement of Blocker's detention (akin to a press release) by the government agency, rather than an official report of the detention, the document is still a government record,[11] and the fair report privilege still extends to it. See, e.g., Chapin v. Knight-Ridder, Inc., 993 F.2d at 1098 (4th Cir. 1993) (holding that a fair and accurate report of the public remarks of a member of Congress fits within the "fair report" privilege); Law Firm of Daniel P. Foster, P.C. v. Turner Broad. Sys., Inc., 844 F.2d 955, 961 (2d Cir. 1988), cert. denied, 488 U.S. 994 (1988) (applying New York's "fair report" privilege to a statement by the

---

[10] See also, Katyle v. Penn Nat. Gaming, Inc., 637 F.3d 462, 466 (4th Cir. 2011), cert. denied, 565 U.S. 825 (2011) (a court may consider "matters of which a court may take judicial notice" without converting a 12(b)(6) motion to a motion for summary judgment); accord, Clatterbuck v. City of Charlottesville, 708 F.3d 549, 557 (4th Cir. 2013). "[C]ourts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007).

[11] Under South Carolina Code §30-4-20(c), a press release or other public announcement by a government agency is still a public record since it was "prepared … by a public body."

head of the New York office of the FBI concerning the execution of a warrant issued by a federal judge); KBMT Operating Co., LLC v. Toledo, 492 S.W.3d 710, 717 (Tex. 2016) (dismissing on "fair report" grounds defamation claims based on press release and administrative order posted by the Texas Medical Board on its website); Cruse v. Frabrizio, No. 3:13-cv-18768, 2014 U.S. Dist. LEXIS 90997, at *14 (S.D.W.Va. Apr. 7, 2014) (magistrate) ("courts in this and other circuits have applied the fair report privilege to articles based upon documents such as the news release issued by the … Sheriff's Department") (collecting cases), adopted, Cruse v. Frabrizio, No. 3:13-18768, 2014 U.S. Dist. LEXIS 90107 (S.D. W. Va. July 2, 2014).

Because WSPA/Defendants merely reused the photo posted by the government agency on SC SAVIN/vinelink.com, WSPA's use of that photo to accompany broadcast and online news stories about the arrest and detention of Blocker falls squarely within the privilege of fair report as a matter of law. Any liability for the inclusion of Plaintiff's photograph in the report of the detention of Blocker lies with the governmental agency that posted the wrong photo. No remedy lies with WSPA, its corporate owners, or its staff.

The Court may take judicial notice of these government records, and rule in Defendants' favor on this Motion to Dismiss without converting this motion to one for summary judgment.

Accordingly, the Court should dismiss Plaintiff's defamation claims against WSPA, its corporate owners, and its staff, with prejudice.

**2.    Plaintiff's Remaining Claims Are Derivative and Duplicative of His Defamation Claims, and Should Be Dismissed as an Inappropriate "End Run" Around Defendants' Constitutional Defamation Protections**

The gravamen of Plaintiff's case is defamation. Plaintiff's remaining causes of action – outrage (intentional infliction of emotional distress), negligence/gross negligence/recklessness,

wrongful publication of private affairs, wrongful appropriation of personality, and false light – all derive from the alleged defamation of Plaintiff by the use of Plaintiff's photo in Defendants' news reports. (See Complaint, ¶¶ 54-80.)  Courts have long prohibited plaintiffs from making an "end run" around the constitutional protections afforded to media defendants for defamation claims by re-casting the claims as negligence, intentional infliction of emotional distress or some other derivative cause of action. See, e.g., Cohen v. Cowles Media Co., 501 U.S. 663, 670 (1991) (plaintiff cannot use alternate state law claims "to avoid the strict requirements for establishing a libel or defamation claim"); Hustler Magazine v. Falwell, 485 U.S. 46, 56 (1988) (precluding the plaintiff from making an end run around the defendant's constitutional defamation protections by casting the claim as one of "intentional infliction of emotional distress"); Dongguk Univ. v. Yale Univ., 734 F.3d 113, 129 (2d Cir. 2013) (negligence); Erickson v. Jones St. Publishers, LLC, 368 S.C. 444, 481-82, 629 S.E.2d 653, 673 (2006) (negligence); Time, Inc. v. Hill, 385 U.S. 374 (1967) (invasion of privacy); Readers' Digest Assoc. v. Superior Court of Marin County, 690 P.2d 610, 624 (Cal. 1984) (invasion of privacy).

This principle has also been applied to efforts to circumnavigate the "fair report" defense. "[A] plaintiff cannot evade the protections of the fair report privilege merely by re-labeling his claim." Yohe v. Nugent, 321 F.3d 35, 44 (1st Cir. 2003). See also Cruse v. Frabrizio, 2014 U.S. Dist. LEXIS 90997, at *22 (S.D.W.Va. 2014 (magistrate)) ("to allow [plaintiff] to circumvent the protections of the fair report privilege simply by alleging intentional infliction of emotional distress would defeat the purpose of the privilege"), adopted, Cruse v. Frabrizio, No. 3:13-18768, 2014 U.S. Dist. LEXIS 90107 (S.D. W. Va. July 2, 2014). Accord Thomas v. Tel. Publ'g Co., 155 N.H. 314, 327, 929 A.2d 991, 1006 (2007); Mullane v. Portfolio Media, Inc., No. 19-11496-PBS, 2020

U.S. Dist. LEXIS 71767, at *23 (D. Mass. Feb. 28, 2020).

Despite their labels, all of Plaintiff's claims arise from the same conduct and seek the same defamation-type damages arising from alleged harm to Plaintiff's reputation as a result of the publication of allegedly defamatory statements (use of Plaintiff's photo in a story about another person's arrest). Plaintiff cannot conduct an "end run" around the protections of the First Amendment – including the fair report privilege – by disguising his defamation claims as other torts. Thus these claims must be dismissed with prejudice.

### 3. Plaintiff's Outrage Claim Fails to Allege Sufficient Factual Support and Must Be Dismissed

In his third cause of action, Plaintiff claims outrage (intentional infliction of emotional distress[12]). He alleges bare bones elements of an outrage cause of action, but with no supporting factual allegations beyond his prior allegations that Defendants included his photo in their news stories about Blocker. (Complaint, ¶ 55.)

Plaintiff's Complaint does not allege any prior knowledge of Plaintiff by WSPA/Defendants, or any reason or context as to why the station and its employees had any motive – let alone intent – to inflict emotional distress upon him. Accordingly, Plaintiff's outrage cause of action must be dismissed.

Moreover, Plaintiff cannot amend his Complaint to allege any plausible claim that Defendants intended to inflict severe emotional distress upon Plaintiff, nor that Defendants' actions were anything more than routine news coverage repeated scores of times a day. Even

---

[12] In South Carolina, the tort of "outrage" is just another name for the tort of "intentional infliction of emotional distress." See, e.g., Folkens v. Hunt, 290 S.C. 194, 203 (Ct.App. 1986).

"extreme insensitivity," Roberts v. Dunbar Funeral Home, 288 S.C. 48, 51, 339 S.E.2d 517, 519 (Ct. App. 1986), "highly inappropriate" behavior," Strickland v. Madden, 323 S.C. 64, 70, 448 S.E. 2d 581, 585 (Ct. App. 1994) or "reprehensible conduct," Corder v. Champion Road Machinery International Corp., 283 S.C. 520, 523, 324 S.E. 2d 79, 81 (Ct. App. 1984), do not satisfy the test for outrage / intentional infliction of emotional distress.  Accordingly, Plaintiff's outrage cause of action should be dismissed *with prejudice*.

In addition, as noted above, the tort of outrage is not available where there is a remedy available under a traditional tort such as defamation.  Folkens v. Hunt, 290 S.C. 194, 204, 348 S.E. 2d 839, 845 (Ct. App. 1986). Todd v. S.C. Farm Bureau Mutual Ins. Co., 283 S.C. 155, 173, 321 S.E.2d 602, 613 (Ct. App. 1984), quashed in part on other grounds, 287 S.C. 190, 336 S.E.2d 472 (1985); Levine v. Walterboro City Police Department, Civ. No. 2:05-2906-18, 2006 U.S. Dist. LEXIS 54320 (D.S.C. Aug. 3, 2006).  Thus, not only is the outrage / intentional infliction of emotional distress tort totally inappropriate under the fact situation here, but South Carolina law is clear that it cannot be used as an end run around defamation law when the gravamen of the complaint is in defamation.

Accordingly, Plaintiff's cause of action for outrage should be dismissed with prejudice.

**4.     There is No Right of Privacy in the Information Published Here, so Plaintiff's Claim for Wrongful Publication of Private Affairs Must Be Dismissed**

In order to sustain a claim for "wrongful publication of private affairs," the information published must involve the claimant's "private life." See Restatement (Second) of Torts, §652D ("One who gives publicity to a matter *concerning the private life of another* is subject to liability to the other for invasion of his privacy…") (emphasis added). "The law does not recognize a right of

privacy in connection with that which is inherently a public matter." <u>Meetze v. Associated Press</u>, 230 S.C. 330, 337, 95 S.E.2d 606, 609 (1956). <u>See</u> <u>also</u>, <u>Todd</u>, 276 S.C. at 291, 278 S.E.2d at 610.[13] Here, the only information published was a photograph of Plaintiff's face, showing his public appearance – not a matter of his private life.

In addition, the information published must actually be private. For the reasons just stated, Plaintiff's appearance is, by its nature, readily public whenever he leaves his home. In addition, there is no privacy in a photograph included in a public record of an individual's detention in a county jail. <u>See</u>, <u>e.g.</u>, <u>Frith v. Associated Press</u>, 176 F. Supp. 671, 676 (E.D. S.C. 1959) (publication of arrest photos of plaintiffs is not a privacy violation); <u>see also</u> <u>Meetze v. Associated Press</u>, at 338, 95 S.E.2d at 610 (1956) (publication of information from birth certificate).

Because the information of Plaintiff's appearance contained in the photo is not private, his privacy claims based on publication of the photo must be dismissed with prejudice.

**5.    WSPA's Use of Plaintiff's Likeness is Not Actionable as Wrongful Appropriation of Personality, and Must Be Dismissed**

South Carolina recognizes a cause of action for "the violation of the plaintiff's exclusive right at common law to publicize and profit from his name, likeness, and other aspects of personal identity." <u>Sloan v. South Carolina Department of Public Safety</u>, 355 S.C. 321, 325, 586

---

[13] "This Court has approved the following as a fairly comprehensive definition of what constitutes an actionable invasion of the right of privacy:
> The unwarranted appropriation or exploitation of one's personality, the publicizing of one's private affairs with which the public has no legitimate concern, or the wrongful intrusion into one's private activities, in such manner as to outrage or cause mental suffering, shame, or humiliation to a person of ordinary sensibilities."

<u>Todd</u> at 291, 278 S.E.2d at 610 (quoting <u>Meetze</u>, <u>supra</u>).

S.E.2d 108, 110 (2003); see also Restatement (Second) of Torts, § 652C.

However, use of someone's name and image for the purposes of news coverage is not actionable, even if the news product is sponsored or sold.

> No one has the right to object merely because his name or his appearance is brought before the public, since neither is in any way a private matter and both are open to public observation. It is only when the publicity is given for the purpose of appropriating to the defendant's benefit the commercial or other values associated with the name or the likeness that the right of privacy is invaded. The fact that the defendant is engaged in the business of publication, for example of a newspaper, out of which he makes or seeks to make a profit, is not enough to make the incidental publication a commercial use of the name or likeness. Thus a newspaper, although it is not a philanthropic institution, does not become liable under the rule stated in this Section to every person whose name or likeness it publishes.

Restatement (Second) of Torts, § 652C, cmt. (c).

This principle has not been limited to news coverage by newspapers; it has been extended to television news coverage as well. Bosley v. WildWetT.com, 310 F. Supp. 2d 914, 923 (N.D. Ohio 2004); see, also Castro v. NYT Television, 370 N.J. Super. 282, 297, 851 A.2d 88, 97 (Super. Ct. App. Div. 2004). And it has been extended to individuals whose images were incidentally included in news reports on other subjects. See, e.g., Jacova v. Southern Radio & Television Co., 83 So.2d 34, 37 (Fla. 1955); Howell v. New York Post Company, Inc., 81 N.Y.2d 115, 612 N.E.2d 699, 596 N.Y.S.2d 350 (N.Y. 1993).

The Complaint alleges no more than that Plaintiff's photo was used by WSPA/Defendants in their news coverage of the arrest and detention of Demarcus Tavon Blocker – and cannot plausibly allege commercial use outside of Defendants' news coverage. Accordingly, Plaintiff's claim for wrongful appropriation of personality must be dismissed with prejudice.

**6.      Plaintiff's Purported Claim for "False Light" is not Recognized in South Carolina, and Must Be Dismissed**

South Carolina is one of many states that have declined to recognize the cause of action of "false light" as independent of a defamation claim. Brown v. Pearson, 326 S.C. 409, 422, 483 S.E.2d 477, 484 (Ct. App. 1997) ("no South Carolina case has recognized this tort"); F.P. Hubbard & R.L. Felix, *The South Carolina Law of Torts* § 7.B.2.d (2014). See, also, Jews for Jesus, Inc. v. Rapp, 997 So. 2d 1098 (Fla. 2008); Denver Publ'g Co. v. Bueno, 54 P.3d 893 (Colo. 2002); Brown v. Hearst Corp., 862 F. Supp. 622 (D. Mass. 1994), aff'd, 54 F.3d 21 (1st Cir. 1995).

Even if South Carolina were to recognize this tort, it cannot be used to evade the protections of the First Amendment. "[I]t is not imaginable that [a false light claim] could escape the same constitutional constraint as [a] defamation claim." Brown v. Hearst Corp., 54 F.3d 21, 27 (1st Cir. 1995).

For these reasons, Plaintiff's purported claim for "false light" must be dismissed with prejudice.

## CONCLUSION

As in the Cobin v Hearst-Argyle case previously decided by this District, the "fair report" privilege precludes Plaintiff's defamation claims from surviving this motion to dismiss.

Plaintiff's other claims must also all fail, since the gravamen of the case is defamation and Plaintiff's other claims are merely an attempt to make an "end run" around the "fair report" privilege and other constitutional protections afforded to media defendants in defamation cases.

Plaintiff's "outrage," "wrongful publication of private affairs" and "wrongful appropriation" claims also fail for the additional reason that Plaintiff has not pled and cannot

plead plausible facts to support them.

Finally, Plaintiff's "false light" claim fails not only because it is an attempted "end run" around the "fair report" privilege, but also because South Carolina does not recognize this cause of action independently from defamation.

Since Plaintiff cannot cure any of these defects by re-pleading, Defendants respectfully request that Plaintiff's claims and his entire Complaint be dismissed with prejudice.

                                  Respectfully submitted,

                                  FENNO LAW FIRM, LLC

                                  By: *s/Edward Fenno*
                                  Edward T. Fenno (Fed. ID No. 7498)
                                  1459 Stuart Engals Blvd., Suite 202
                                  Mt. Pleasant, South Carolina 29464
                                  Ph: (843) 720-3747
                                  Fax: (843) 614-5093
                                  Email: efenno@fennolaw.com

                                  ATTORNEY FOR DEFENDANTS
                                  NEXSTAR BROADCASTING INC. and
                                  NEXSTAR MEDIA GROUP, INC.

December 1, 2020
Mt. Pleasant, South Carolina