**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**GREENWOOD DIVISION**

| | | |
|---|---|---|
| **DOUGLAS TURNER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil No.:  8:20-CV-04115-BHH** |
| | ) | |
| **NEXSTAR BROADCASTING, INC.,** | ) | **MEMORANDUM IN OPPOSITION TO** |
| **NEXSTAR MEDIA GROUP, INC., and** | ) | **DEFENDANTS' MOTION TO DISMISS** |
| **JOHN/JANE DOE,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| _____ | ) | |

Plaintiff, by and through his undersigned counsel and in response to Defendants' Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, files this Memorandum in Opposition to Defendants' Motion to Dismis.

### FACTS

### Allegations Contained in Plaintiff's Pleadings

In their memorandum, Defendants Nexstar Boradcasting, Inc. ("NBI")[1] and Nexstar Media Group, Inc. ("NMGI")[2] acknowledge that central to this suit are digital and broadcast publications depicting Plaintiff's face alongside reporting about a man accused of and arrested

---

[1] Consistent with NBI's representation to the Court in its memorandum, Defendant NBI appears to have renamed itself Nexstar, Inc. as of November 24, 2020.

[2] While Defendants' memorandum acknowledges that its motion to dismiss is not the time to address this particular issue, Defendant NMGI's representation that it is merely a parent company of NBI is inconsistent with the information immediately accessible to Plaintiff and provided by Plaintiff to Defendants.  Rather than a mere holding company, it appears that NBI and NMGI both operate WSPA.  NMGI has alleged that it does business as WSPA and WYCW in at least one action filed in the Court of Common Pleas.  NMGI appears to hire personnel for WSPA, provide policies and reports for WSPA, and own the facility out of which WSPA operates.

for child sex crimes.  In October of 2019, Defendants ran a story about a criminal defendant and registered sex offender and displayed Plaintiff's image prominently when describing the heinous acts for which the offender had been arrested.  See: Complaint, ECF No. 1 ¶¶ 13-34.  Plaintiff was not the offender.  Id. at ¶ 18.  Defendants had incorrectly published a photograph of Plaintiff during the broadcast news story discussing the arrest of the sex offender and republished a Photograph of Plaintiff alongside the digital news story describing the same.  Id. at ¶¶ 13-34.

Defendants' digital publications included Plaintiff's photograph alongside text proclaiming **"A Greenwood man was arrested on multiple charges related to the solicitation of a minor, the South Carolina Attorney General's Office said."**  Id. at ¶ 17.  Below a color picture of Plaintiff, Defendants posted text that read **"Greenwood man accused of multiple solicitation of minor charges."**  Id. at ¶¶ 19-20.  A reasonable person viewing the different iterations of the story and seeing Plaintiff's picture would conclude that the Plaintiff was the person arrested for committing child sex crimes.  Id. at ¶ 15.  He was not.

Attached as **"Exhibit A,"** is a copy of Plaintiff's Summons and Complaint and the two exhibits attached thereto.  These exhibits are screen captures of two of the Defendants' publications that wrongfully identified Plaintiff as an individual arrested for sexual predation.  Id. at ¶¶ 13-22.  The real criminal defendant accused of sexual predation, Demarcus Blocker, was not depicted in any of Defendants' publications, despite the fact that Demarcus Blocker was already a registered sex offender who had previously been convicted of committing sex crimes.[3]

---

[3] It is worth noting that multiple images actually depicting Demarcus Blocker can be found on the South Carolina's sex offender registry—a website actually maintained by the State of South Carolina.

2

Id. at ¶ 22.  Noticeably absent from Defendant's defamatory publications depicting Plaintiff as a sexual predator is any attribution regarding the source of Plaintiff's photograph.[4]  Id. at ¶ 31.

Plaintiff filed suit against Defendants alleging causes of action for defamation per se, defamation per quod, outrage, negligence/gross negligence, wrongful publication of private affairs, wrongful appropriation of personality, and false light.  Id. at ¶¶ 35-80.

## ANALYSIS

### Standard of Review

A plaintiff's complaint should set forth "a short and plain statement of the claim showing that the pleader is entitled to relief in order to give the defendant fair notice of what the claim is and the grounds upon which it rests."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal quotations omitted).  Rule 8 of the Federal Rules of Civil Procedure "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp., 550 U.S. at 555). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Id. (quoting Twombly, 550 U.S. at 570)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (quoting Twombly, 550 U.S. at 556)).

In considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a court "accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009).  An

---

[4] Defendants' failure to attribute the photograph to a source is significant in a case where Defendants contend that the "fair report privilege" inoculates them from civil liability for the defamation of Plaintiff's character.

exhibit to a pleading is part of that pleading for all purposes. And, the Court will give the complaint the benefit of reasonable inferences from all non-conclusory allegations. Iqbal, 556 U.S. at 678. A court should grant a Rule 12(b)(6) motion if, "after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." Edwards v. City of Goldsboro, 178 F.3d 231, 244 (4th Cir. 1999).

It should be noted that in the State of South Carolina, "important questions of novel impression should not be decided on a motion to dismiss." Unisys Corp. v. S.C. Budget & Control Bd. Div. of Gen. Servs. Info. Tech. Mgmt. Office, 346 S.C. 158, 165, 551, S.E.2d 263, 267 (2001) (See also Chestnut v. AVX Corp., 413 S.C. 224, 227, 776 S.E.2d 82, 84 (2015): "[N]ovel questions of law should not ordinarily be resolved on a Rule 12(b)(6) motion"). "Instead, a novel issue is best decided in light of the testimony to be adduced at trial." Evans v. State, 344 S.C. 60, 68, 543 S.E.2d 547, 551 (2001).[5]

### Defendants' Motion to Dismiss Alleges Facts Not Contained in the Complaint

Defendants' motion to dismiss is based, almost entirely, on the allegation that the Defendants' are protected from civil liability for defaming the Plaintiff because of the "fair report privilege." Defendants' argument is based on assertions and evidence not found in Plaintiff's Complaint. Between pages one and five of Defendants' Memorandum, Defendants assert a series of factual statements and provide exhibits related to those factual assertions that are found nowhere in Plaintiff's pleadings. Defendants argue that the Court should take judicial

---

[5] Plaintiff notes this particular South Carolina standard inasmuch as once the Doe Defendant in the present matter is identified and served there will be a lack of complete diversity and, therefore, the Court will lack of subject matter jurisdiction.

notice of Defendants' factual assertions despite the fact that there exists no foundation sufficient to merit the admission of Defendants' evidence and despite the fact that Defendants' proffered facts and exhibits are inconsistent with the alleged "public records"[6] Defendants call upon this Court to rely.[7]

Defendants contend that they sourced Plaintiff's photograph from VINE[8], a website owned and operated by Appriss, Inc.  See: Memorandum, ECF 6, page 4 and Exhibit 2, ECF 6. However, nowhere in the articles attached as exhibits to Plaintiff's Complaint do the Defendants attribute the photograph to VINE or, for that matter, SC SAVIN.  The photograph included in Defendants' publication is without any form of attribution or other designation within the text of Defendants' article that would lead a reasonable person to believe that the photograph was provided by SC SAVIN or any governmental entity.

Defendants want this Court and the Plaintiff to rely on Defendants' claims that Defendants sourced Plaintiff's photograph from VINE when Defendants can only establish that

---

[6] Defendants' proffered documents and cited website do not constitute public records.  They are materials from VINE—a website owned and operated by Appriss, Inc., a privately owned corporation based in Kentucky that provides a number of software services and solutions for risk mitigation, patient care, and improved retail performance.  Defendants repeatedly refer to VINE as if it is owned, maintained, or operated by a government entity when it is owned, maintained, and operated by individuals and private equity firms.

[7] Defendants acknowledge in footnote 3 to their Memorandum that the records presently on the VINE website do not include a booking photograph of Plaintiff alongside information regarding Demarcus Blocker.  Instead, Demarcus Blocker's booking information includes a photograph of Demarcus Blocker (Defendants subsequently make an erroneous presumption about the activities of Plaintiff's counsel in that same footnote, which is not surprising given the lack of journalistic standards Defendants appear to have employed in Plaintiff's case).

[8] Defendants repeatedly conflate the SC SAVIN website with VINE.  Based on the documents produced by Defendants as exhibits to their Motion to Dismiss, SC SAVIN appears to be a webpage with a .gov URL but with little else to help ascertain the identity of the entity responsible for its maintenance and operation.  That website appears to host a link to VINE. However, as was discussed in footnote 6, supra, VINE is a product owned by Appriss, Inc., a private corporation.  Defendants' attached exhibits that allegedly capture content contained on VINE at some point in time all contain Appriss's logo, and Defendants' linked VINE webpages are all emblazoned with Appriss, Inc.'s copyright.

fact with testimony from whomever was responsible for obtaining Plaintiff's photograph for publication. Defendants' arguments regarding the fair report privilege are moot because Defendants cannot establish the facts they assert to be true without testimony from a witness or witnesses explaining that Defendants did in fact obtain Plaintiff's photograph in the manner and fashion described by Defendants in their Memorandum.

<u>**Plaintiff Objects to Defendants' Request for Judicial Notice**</u>

Defendants have, in their memorandum, requested that this Court take judicial notice of the above-mentioned factual allegations. Plaintiff objects to Defendants' request and moves that this Court refrain from considering any of Defendants' assertions of fact or any of Defendants' proffered exhibits in deciding Defendants' motion to dismiss.

Generally, district courts are to only consider the materials contained in a Plaintiff's pleadings in determining the adequacy of Plaintiff's complaint on a motion to dismiss pursuant to Rule 12(b)(6). When parties proffer evidence not found in the pleadings, the motion to dismiss converts to a motion for summary judgment and both parties are afforded the opportunity to present any and all materials existent in the case that are pertinent to the motion.

As this Court is aware, there are two exceptions to this rule: the incorporation-by-reference doctrine and judicial notice pursuant to Rule 201 of the Federal Rules of Evidence. The Defendants in this case faced "an alluring temptation to pile on numerous documents to their motion[] to dismiss to undermine the complaint, and hopefully dismiss the case at an early stage." <u>Khoja v. Orexigen Therapeutics, Inc.</u>, 899 F. 3d 988, 998 (9th Cir. 2018). "Yet the unscrupulous use of extrinsic documents to resolve competing theories against the complaint risks premature dismissals of plausible claims that may turn out to be valid after discovery." <u>Id</u>. "If defendants are permitted to present their own version of the facts at the pleading stage—and

district courts accept those facts as uncontroverted and true—it becomes near impossible for even the most aggrieved plaintiff to demonstrate a sufficiently 'plausible' claim for relief." Id. at 999.

A fact is only appropriate for judicial notice if it is "not subject to reasonable dispute because it (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot be reasonably questioned." Loftus v. F.D.I.C., 989 F.Supp.2d 483, 489 (D.S.C. 2013). "The party requesting judicial notice of the particular fact bears the burden of proving that Rule 201's standard is satisfied." Id. at 490.

Defendants not only request the Court to take judicial notice of the authenticity of items that are presently not available on the internet, but Defendants request that the Court presume to be true Defendants' assertions regarding the process by which Defendants allege they sourced the photograph of Plaintiff that Defendants published alongside an article defaming him. Defendants' request is without foundation and requires that the Court assume the following facts: (1) that Defendants' employee obtained Plaintiff's photograph from VINE; (2) that Defendants' employee accessed VINE from the SC SAVIN webpage; (3) that the screen captures provided as exhibits to Defendants motion to dismiss are fair and accurate copies of records kept by Appriss; and (4) that Appriss is a governmental entity.

At a minimum, Defendants need testimony to establish where Plaintiff's photograph came from, to explain the purpose of the SC SAVIN webpage and service, to lay the foundation for the accuracy of any records kept by VINE or Appriss, to explain whether any records kept by VINE or Appriss were kept in the normal course and scope of business, to explain the nature and extent of any relationship between Appriss and the State of South Carolina or any political

7

subdivision thereof, to explain why Appriss hosts the information it hosts, and to determine whether Appriss's materials are to be relied on and/or republished.

Furthermore, the Court should only take judicial notice of facts "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Denton v. Hernandez, 504 U.S. 25, 30 (1992). In the present matter, the documents of which Defendants have requested that the court take judicial notice, provide that Appriss, the entity capable of authenticating the documents, "does not warrant or guarantee the accuracy or completeness" of the information provided in the documents. Furthermore, Defendants' submitted exhibits provide that the commercial use of information contained on Appriss's website is strictly prohibited and prohibits users of its site from selling, modifying, reproducing, displaying, distributing, retransmitting, or otherwise using the content from Appriss's website in any way, without Appriss's express written consent.

The Defendants' request that this Court take judicial notice of the facts asserted by Defendants and of the authenticity of the documents submitted by Defendants requires that the Court accept as true facts for which there does not exist foundation in the pleadings or in any government records or other records of which the Court would be capable of taking judicial notice. Additionally, as the accuracy of these items is in dispute and as the source from which the Defendants allegedly obtained the photograph of Plaintiff provides that it "does not warrant or guarantee the accuracy or completeness" of its records, the Court should not take judicial notice of the materials proffered by Defendants and should only consider those items contained in Plaintiff's pleadings.

## VINE and Appriss are not the Government

Even assuming, arguendo, that all of Defendants' factual assertions contained in Defendants' Motion to Dismiss and supporting documents are true, Defendants still cannot rely on the fair report privilege to inoculate them from civil liability as VINE, the website from which Defendants allege they obtained Plaintiff's photograph, is not a governmental entity and, therefore, does not inoculate Defendants from civil liability for defaming and otherwise damaging Plaintiff.

VINE is a victim notification service owned by Appriss, Inc.  Laccinole v. Appriss, Inc., 453 F.Supp.3d 499, FN 1 (D.R.I. 2020).  Appriss is a software services company that sells software to government agencies and commercial entities.  Burton v. Appriss, Inc., 192 F.Supp.3d 792 (W.D. Ky 2016).  It is incorporated in Delaware with a principal place of business in Louisville, Kentucky.  Burton v. Appriss, Inc., 682 Fed. Appx. 423 (6th Cir. 2017).  Appriss contracts with individual states to provide updates to crime victims on the status of alleged offenders.  Laccinole, at FN 2.  Appriss provides other services including but not limited to: telephone notifications for crime victims (Id.); data amalgamation for pharmacies and investigative agencies (State v. Mealor, 425 S.C. 625 (Ct. App. 2019)); information updates for crime victims (Appriss Inc. v. Information Strategies, Inc., 2011 WL 3585890 (W.D. Ky 2011)); and collision report amalgamation for citizen consumers and third-party purchasers (Whitaker v. Appriss, Inc., 2014 WL 4536559 (N.D. Ind. 2014).

In their motion to dismiss and supporting memorandum, Defendants conflate a website entitled SC SAVIN and VINE and often discuss the webpages as if both are maintained by the same entity when this is patently false.  First, the two webpages have separate and distinct URLs.  Second, while the SC SAVIN webpage hosts a link to VINE, it provides a telephonic service designed to let victims know whether an offender remains incarcerated.  The VINE website is

NOT the SC SAVIN service.  The SC SAVIN service is wholly separate and distinct from the service provided by VINE—namely, data aggregation and indexing.

Even if Defendants' exhibits are presumed to be authentic and reliable, there exists a significant factual issue regarding the form, function, and ownership of SC SAVIN and the form, function, and ownership of Appriss and VINE.  In a case brought pursuant to the Telephone Consumer Protection Act of 1991 the Rhode Island District Court acknowledged that "the precise relationship between Appriss and [a] victim notification service is fact-intensive and cannot be resolved [on a motion to dismiss]." Laccinole v. Appriss, Inc., 453 F.Supp.3d 499, FN 1 (D.R.I. 2020).

Likewise, in the instant matter, it is impossible to assume that, based on the limited amount of information contained on the webpages provided by Defendants, VINE is a governmental entity or that VINE and SC SAVIN are a singular entity.  If anything, the vast majority of the available evidence would indicate to a reasonable person that VINE and Appriss serve as a data aggregator that different entities, governmental and non-governmental, as well as private parties use for a variety of purposes.

**The Fair Report Privilege is not Available to Defendants**

As Defendants' acknowledge in their memorandum, the republication rule provides that an entity responsible for the republication of a defamatory statement is liable as the original defamer.  Corbin v. Hearst-Argyle, 561 F.Supp.2d 546, 550 (D.S.C. 2008).  However, the press is shielded from liability for defamation when the press merely republishes government reports or official statements.  The republication must be of official actions or proceedings and must be accurate and either complete or fairly abridged.  Chapin v. Knight-Ridder, Inc., 993 F.2d 1087, 1097 (4th Cir. 1993) (citing Restatement (Second) of Torts § 661).  "The fair report privilege,

10

therefore, protects the reporting source if the contents of the governmental record ultimately proves defamatory itself.  Carter v. Dozier, 2011 WL 2457547 (D.S.C. 2011).

"However, the privilege attending the publication of a news report arises by reason of the occasion of the communication, and a communication of statement which abuses or goes beyond the requirement of the occasion, loses the protection of privilege." Jones v. Garner, 250 S.C. 479, 487 (1968).  The publisher loses the privilege if it republishes an item with actual malice. Lybrand v. State Co., 179 S.C. 208 (1936).  In the context of a defamation action, actual malice is defined as acting with knowledge that the statement was false or acting with a reckless disregard for the truth.  New York Times, Inc. v. Sullivan, 376 U.S. 254 (1964).  The actual malice standard "does not differ significantly with the frequently enunciated standard, 'willful, wanton, or in reckless disregard of the plaintiff's rights.'"  Holtzscheiter v. Thomson Newspapers, Inc., 332 S.C. 502, 525 (1998).

While, "[g]enerally, whether a publication gives rise to a qualified privilege is a question of law for the courts," "[w]hen conflicting evidence exists, the question of whether a qualified privilege has been abused is one for the jury." Trexler v. Associated Press, 2015-UP-201, 2015 WL 1681002, 2 (S.C. Ct. App. Apr. 15, 2015) (internal quotations and brackets omitted).  "[T]he question whether [a qualified] privilege has been abused is one for the jury." West v. Morehead, 396 S.C. 1, 8 (2011).

Assuming all of Defendants' factual assertions and arguments to be true, Defendants cannot hide behind the fair report privilege in this case because the Defendants' publications relied on materials published by a non-governmental entity.  Defendants' contention that materials published on VINE by Appriss constitute government records is inaccurate. Defendants' best argument is that SC SAVIN linked to a third-party host.  Were the fair report

privilege to apply to the data hosted by Appriss on VINE because the website was linked to by

SC SAVIN, then the press could republish without consequence materials found on Facebook,

Twitter, or YouTube so long as some government website somewhere provided a link to those

websites.  What Defendants call for is an extreme remedy and a far cry from the purpose for

which the fair report privilege was designed—to ensure that the media reports regularly on

government operations so that citizens can monitor them.  Instead, an extension of the privilege

in circumstances like those alleged by Defendants would open the door to endless attempts by

media defendants to circumvent civil liability for the republication of defamatory materials found

on third-party websites.

Furthermore, if Defendants' proffered exhibits are accepted as true and accurate copies of

the same, then there exists a factual issue as to whether the Defendants acted with actual malice

in publicizing materials from a website that cautioned that it did "not warrant or guarantee the

accuracy or completeness of any information on [its] service."  The issue regarding the

Defendants reckless conduct is further compounded by the Defendants decision to allegedly

broadcast materials from a site that "strictly prohibited" "[a]ny commercial use of [its]

information."  The website further barred the Defendants from republishing materials found on

its site without express written permission from the website.  That Defendants chose to publish

the aforementioned defamatory materials with full knowledge of these circumstances would

indicate to a reasonable person that the Defendants acted with a reckless disregard for the truth or

otherwise acted in reckless disregard for the Plaintiff's rights.

### Defendants Added Materials to Plaintiff's Photograph

The fair report privilege "extends only to a report of the contents of the public record and

any matter added to the report by the publisher, which is defamatory of the person named in

public records, is not privileged."  West v. Morehead, 396 S.C. 1, 8 (2011).  The fair report privilege does not shield a defendant from liability when it publishes reports based on its own investigation, rather than the strictly republishing a government report or action.  Tharp v. Media General, Inc., 987 F.Supp.2d 673, 685 (D.S.C. 2013).

In the instant matter, if Defendants' representations are presumed to be true, then Defendants published a photograph of Plaintiff that VINE and Appriss had incorrectly named "Demarcus Blocker."  Then, beneath Plaintiff's photograph, Defendants wrote "A Greenwood man was arrested on multiple charges related to the solicitation of a minor," and "Greenwood man accused of multiple solicitation of minor charges" before running a detailed story about a man arrested for committing alleged sex crimes.

Assuming all of Defendants' arguments are true, Defendants still added to the republished "report" information not contained in that report.  As Defendants' own investigation is what ultimately resulted in the defamatory publications regarding Plaintiff, Defendants cannot rely on the fair report privilege.

### Defamation

The elements of defamation in South Carolina are: 1) a false and defamatory statement; 2) the unprivileged statement was published to a third party; 3) the publisher was at fault; and 4) the statement was either actionable irrespective of harm or the publication of the statement caused special harm.  Fleming v. Rose, 350 S.C. 488, 494 (2002).

In the instant matter, if the allegations contained in Plaintiff's Complaint are deemed to be true, then Defendants' statements alongside Defendants' publication of Plaintiff's visage are false and defamatory.  Defendants' statements were published to third parties.  Defendants

caused these false statements to be published to third parties, and Defendants' representations are both actionable on their face and responsible for specific harms suffered by the Plaintiff.

## Defamation Per Se, Per Quod, and Actionability Per Se

Defamation per se is a statement that is defamatory on its face, while defamation per quod is a statement which does not appear defamatory on its face but becomes defamatory by virtue of the circumstances existent at the time of or surrounding the publication of the representation. Holtzscheiter v. Thomson Newspapers, Inc., 332 S.C. 502, 526 (1998).

A defamation case that is actionable per se is one that charges the plaintiff with one of five types of acts or characteristics: 1) commission of a crime; 2) contraction of a loathsome disease; 3) adultery; 4) unchastity; or 5) unfitness in one's business or profession. Id. at 511, 506 S.E.2d at 502. In the instant matter, Plaintiff alleges that Defendants have defamed Plaintiff by alleging that Plaintiff was charged with committing sex crimes on minor children—statements that are actionable irrespective of harm. In addition, Plaintiff alleged general damages related to the impact Defendants defamatory publications had on Plaintiff's well-being.

Defendants' only argument that Plaintiff's causes of action for defamation should fail is that Defendants believe they should be inoculated from civil liability by the fair report privilege. As is discussed in the above sections, the fair report privilege does not protect the Defendants from their tortious conduct. As a result, with regards to Plaintiff's defamation causes of action, Defendants' motion to dismiss should be denied.

## Outrage[9]

---

[9] Defendants argue that Plaintiff has pleaded outrage as an "end around" the protections afforded media defendants by the fair report privilege when this is not the case. While Plaintiff should not be able to force a round peg into a square hole, if the allegations support the elements of a particular tort, then Plaintiff is not barred from maintaining a cause of action for that tort. However, at trial, Plaintiff may be required to elect his remedy to avoid double recovery for a

To establish a claim for outrage, the Plaintiff must show that: 1) the defendant intentionally or recklessly inflicted severe emotional distress; 2) the defendant's conduct was so extreme and outrageous to exceed all possible bounds of decency and must be regarded as atrocious and utterly intolerable in a civilized community; 3) the actions of the defendant caused the Plaintiff's emotional distress; and 4) the Plaintiff's emotional distress was so severe that no reasonable person could be expected to endure it. Hansson v. Scalise Builders of South Carolina, 374 S.C. 352 (2007).

Here there is no question that Plaintiff suffered emotional distress and Defendants do not allege as much. Furthermore, Defendants do not dispute in their memorandum that the Defendants' actions were extreme and outrageous. Instead, Defendants argue that the pleadings do not support an argument that Defendants' actions were intentional or reckless.

### Intentional or Reckless

As has been discussed above, Defendants published a story about a known sex offender who was again arrested for committing alleged sex crimes and published a picture of an entirely different citizen alongside the aforementioned criminal allegations. Defendants published Plaintiff's photograph under circumstances evidencing a reckless disregard for the truth of the publication or the impact the publication would have.

If Plaintiff's factual assertions are presumed to be true, then Defendants did not obtain the photograph of Plaintiff that they published from any reliable source to whom the photograph could be attributed. Defendants' publications failed to provide a source for the photograph of Plaintiff anywhere near the picture itself, and the article accompanying the photograph also failed to name the source from whence the photograph came. See: Complaint, ¶¶ 30-34.

---

single wrong. Harbin v. Owens-Corning Fiberglass, 316 S.C. 423 (1994). If there is no double recovery, then there is no election of remedies problem. Id.

On the other hand, if Defendants' factual allegations and arguments are presumed to be true, then Defendants' sourced Plaintiff's photograph from VINE. As was mentioned above, what is significant about this claim from Defendants is that the VINE website expressly states that Appriss, the entity that maintains VINE, "does not warrant or guarantee the accuracy or completeness of any information on our service." See: Exhibit 2, ECF 6. Furthermore, Appriss states that the materials hosted on its site are "[f]or personal use only" and that "[a]ny commercial use of this information is strictly prohibited." Id. Appriss further provides that users of its website "may not collect, sell, offer for sale, modify, reproduce, display, publicly perform, import, distribute, retransmit or otherwise use the content from this website in any way, without the express written permission of Appriss." Id.

That Defendants would, by their own admission, rely on third party materials that are not guaranteed to be reliable when the third party expressly prohibits commercial use of the materials evidences a reckless disregard for the truth and reckless indifference to the potential consequences of their actions. It is extreme and outrageous and exceeded the bounds of decent conduct that Defendants would publicize materials the republication of which was expressly prohibited. Plaintiff's emotional distress, it appears, is of less concern to the Defendants than the timely publication of a news story or clicks on a webpage. Ultimately, the nature and extent of Defendants' recklessness is a matter for the jury to decide and, as such, Defendants' Motion to Dismiss Plaintiff's cause of action for outrage should be denied.

**Negligence/Gross Negligence/Recklessness**

Defendants do not argue that they do not owe Plaintiff a duty, they merely argue that Plaintiff's claim should fail as Defendants believe that Defendants' publications fall under the fair report privilege. Other than Defendants' articulation that Plaintiff's claims should be

dismissed pursuant to the fair report privilege, Defendants have articulated no other cause meriting dismissal of Plaintiff's negligence claims.

As is articulated above, the circumstances alleged by Defendants that resulted in Defendants' publication of Plaintiff's photograph alongside text regarding the arrest of an individual for sex crimes are such that a motion to dismiss that relies exclusively on the fair report privilege is not supported by the pleadings. Even if the court were to assume Defendants' arguments and evidence to be true, the fair report privilege would not apply as Defendants' relied on a third-party, non-governmental source for Plaintiff's photograph. Based on the foregoing, Defendants' motion to dismiss should be denied.

### Plaintiff's Invasion of Privacy Claims

The South Carolina Supreme Court has defined the right of privacy as "the right to be let alone," "the right of a person to be free from unwarranted publicity," or "the right to live without one's name, picture or statue, or that of a relative, made public against his will." Holloman v. Life Ins. Co. of Virginia, 192 S.C. 454 (1940). "In South Carolina, there are three separate and distinct causes of action for invasion of privacy: 1) wrongful appropriation of personality; 2) wrongful publicizing of private affairs; and 3) wrongful intrusion into private affairs."[10] Sloan v. South Carolina Dept. of Public Safety, 355 S.C. 321, 325-326 (2003).

### Wrongful Publication of Private Affairs

The elements of wrongful publication of private affairs are: "(1) publicizing, (2) absent any waiver or privilege, (3) private matters in which the public has no legitimate concern, (4) so as to bring shame or humiliation to a person of ordinary sensibilities." Swinton Creek Nursery v.

---

[10] Professor William Prosser identified four invasion of privacy torts: 1) intrusion; 2) disclosure 3) false light; and 4) appropriation. Gignilliat v. Gignilliat, Savitz & Bettis, L.L.P., 385 S.C. 452, 458 (2009). Professor Prosser's recognition of false light as an invasion of privacy tort is worth noting given that South Carolina has not yet recognized false light as a tort.

<u>Edisto Farm Credit, ACA</u>, 334 S.C. 469, 478 (1999).  Publicity means that "the matter is made public by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge."  <u>Id</u>. at 480.  The publication "must be of such a nature as a reasonable man can see might and probably would cause mental distress and injury to anyone possessed of ordinary feelings and intelligence, situated in like circumstances as the complaint."  <u>Meetze v. Associated Press</u>, 230 S.C. 330, 338, 95 S.E.2d 606, 610 (1956)

Defendants published Plaintiff's photograph alongside text that would make a reasonable person believe Plaintiff was charged with committing a sex crime.  There existed no legitimate public interest in the false characterization of Plaintiff as Demarcus Blocker.  Defendants caused shame and humiliation to Plaintiff as a result of their publication.  The public at large had no legitimate interest in seeing Plaintiff falsely characterized as a sexual criminal, and, as was discussed more fully above, the publication was not privileged.  Based on the foregoing, Defendants' motion to dismiss should be denied.

### Wrongful Appropriation of Personality

"Wrongful appropriation of personality involves the intentional, unconsented use of plaintiff's name, likeness, or identity by the defendant for his own benefit."  <u>Sloan v. South Carolina Dept. of Public Safety</u> at 326.  "The gist of the action is the violation of the plaintiff's exclusive right at common law to publicize and profit form his name, likeness, and other aspects of his personal identity."  <u>Id</u>.  Wrongful appropriation of personality "involves infringement on the right to the commercial protection of one's name, likeness, or identity."  <u>In re Wiser</u>, 2010 WL 5437241, 7 (Bankr. D.S.C. 2010).

Defendants did not use Plaintiff's likeness in a manner either consistent with Plaintiff's identity or his reputation. Plaintiff's image was not depicted incident to a story Defendants ran about Plaintiff. Instead, Defendants selected Plaintiff's photograph and then ran a story about an entirely separate person who was accused of committing sex crimes. Defendants "sold" their story on their website, social media account(s), and broadcast by running Plaintiff's photograph when discussing the heinous acts of a third party. Defendants certainly benefit financially by running news stories. Furthermore, the value of Plaintiff's likeness has been diminished by virtue of the fact that Defendants falsely characterized him as a sexual predator. Based on the foregoing, Defendants' motion to dismiss should be denied.

### False Light

While, South Carolina has not yet recognized the tort of false light, South Carolina courts have not yet ruled that the cause of action does not exist. Parker v. Evening Post Pub. Co., 317 S.C. 236, 246 (Ct. App. 1994). It would be premature to dismiss a claim for false light at the pleading stage "solely on the ground that it has not yet been recognized as an actionable tort." Sign-N-Ryde, LLC v. Preferred Automotive Group, LLC, 2011-UP-554, 2011 WL 11736317, 1 (S.C. Ct. App. Dec. 9, 2011) (quoting Madison v. Am. Home Prods. Corp., 358 S.C. 449, 451 (2004) "As a general rule, important questions of novel impression should not be decided on a motion to dismiss.").

A party "is subject to liability for false light invasion of privacy if that party 'gives publicity to a matter concerning another that places the other before the public in a false light.'" Id. (quoting Restatement (Second) of Torts § 652E (1977)). The Restatement provides two elements for a false light case: 1) that the false impression would be highly offensive to a reasonable person; and 2) that the actor knew the impression was false or acted with reckless

disregard as to the falsity of the publicized matter and the false light in which the victim would be placed.

If there were a set of facts cherry picked for the Courts of South Carolina to use to officially recognize the tort of false light, then Plaintiff's case provides those facts. Defendants published a news story on their website, on their on-air broadcast, and on Facebook that indicated to any reasonable person viewing those items that Plaintiff had been charged with sex crimes. That false impression would be highly offensive to any reasonable person and was highly offensive to the Plaintiff. Furthermore, the Defendants acted with reckless disregard as to the falsity of the publicized matter by allegedly sourcing Plaintiff's photograph from a website that expressly forbade republication and warned that the contents of the website were not guaranteed to be accurate or complete. Based on the foregoing, Defendants' motion to dismiss should be denied.

## **CONCLUSION**

Because Defendants have moved to dismiss Plaintiff's action pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Plaintiff's pleadings should be interpreted as statements of fact. If each of Plaintiff's allegations is deemed to be true, then Plaintiff has sufficiently pled factual allegations satisfying the elements of each cause of action included in Plaintiff's Complaint.

Respectfully submitted,


s/ Sam Tooker_____ _____
SAMUEL BARTON TOOKER
Federal Bar No.:  12162
318 West Stone Ave.
Greenville, South Carolina 29609
Telephone: (864) 271-2636
sam@greenvillelegal.com
Attorney for Plaintiff
DOUGLAS TURNER

Greenville, South Carolina
December 15, 2020