UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENWOOD DIVISION

| | |
|---|---|
| DOUGLAS TURNER, ) <br> ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> ) <br> ) <br> NEXSTAR BROADCASTING, INC., ) <br> NEXSTAR MEDIA GROUP, INC., and ) <br> JOHN/JANE DOE, ) <br> ) <br> Defendants. ) <br> ) <br> ) | Civil No.: 8:20-CV-04115-BHH <br><br><br> **DEFENDANT'S REPLY TO PLAINTIFF'S MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS** |

Defendants Nexstar Broadcasting, Inc.[1] ("NBI") and Nexstar Media Group, Inc. ("NMGI") (collectively, "Defendants") respectfully submit this Reply to Plaintiff's Memorandum in Opposition to Defendants' Motion to Dismiss.

## SUMMARY OF ARGUMENT

Plaintiff's case is ripe for dismissal based on Defendants' constitutional "fair report" privilege. But Plaintiff seeks to push the case into the expensive "discovery" phase. To do so, Plaintiff makes essentially four arguments against application of "fair report" at this dismissal stage of the case. Each of these arguments fails, as follows:

    1.    Plaintiff's argument that his photo on vinelink.com is not a government record or record of government action fails because (i) the vinelink.com webpage containing the photo (and the pages in the SC SAVIN search leading up to it) explicitly facially reference that they are

---

[1] Recently renamed Nexstar Inc.

part of the SC SAVIN government service; (ii) the SC SAVIN home page, savin.sc.gov, explicitly directs its users to vinelink.com as part of the SC SAVIN "system" – rather than merely providing a link to it; (iii) even if vinelink.com is merely a government contractor, the "fair report" privilege still applies; and (iv) precedent indicates that official government action/statements can be made on third party websites, including websites like Twitter (where President Trump made many of his official statements[2]).  See Argument 1 below.

    2.      Plaintiff's argument that the Court cannot take judicial notice of materials posted on vinelink.com fails because (i) precedent shows that numerous courts, including the District of South Carolina, have already taken judicial notice of content from Vinelink; and (ii) courts regularly take judicial notice of news articles, press releases, stock prices, and other published information, even if it is not a government record.  See Argument 2 below.

    3.      Plaintiff's argument that the Court cannot resolve this case based on a Motion to Dismiss – due to Plaintiff's request for additional foundational testimony – fails because (i) precedent indicates that such dismissals have been granted in similar instances; and (ii) such foundational testimony is "irrelevant" so long as the government actions or records are fairly and accurately reported by the Defendants.  See Argument 3 below.

    4.      Plaintiff's argument that Defendants' use of the photo of Plaintiff exceeds the scope of the "fair report" privilege fails because (i) Plaintiff has not alleged (and cannot allege) that Defendants included anything substantive in the news stories at issue that was not produced by the government; and (ii) Plaintiff did not and cannot allege that Defendants knew the photo was of Plaintiff rather than Demarcus Blocker.  See Argument 4 below.

---

[2] See James Madison Project v. DOJ, 302 F. Supp. 3d 12, 24 (D.D.C. 2018) (stating that President Trump's "tweets" on Twitter are "official statements of the President of the United States").

3

Plaintiff also essentially fails to address Defendants' First Amendment case law stating that Plaintiff cannot make an "end run" around the constitutional protection of the "fair report" privilege by re-casting its defamation claims under other names, such as negligence, thereby effectively conceding this argument. So, in the event that Defendants prevail on their "fair report" argument, Plaintiff's remaining causes of action should also be dismissed. See Argument 5 below.

Plaintiff's remaining arguments, supporting individual non-defamation causes of action, also fail because Plaintiff's Complaint does not (and cannot) allege sufficient facts to state viable claims for these causes of action. See Arguments 6.a – 6.d below.

## ARGUMENT

**1.     The Posting of Plaintiff's Photograph on Vinelink.com Does Not Preclude Dismissal Pursuant to the "Fair Report" Privilege**

In his Memorandum in Opposition to Defendants' Motion to Dismiss (ECF 9) ("Opposition"), Plaintiff makes much of the fact that the photo at issue is posted on vinelink.com, arguing that information from this website "do[es] not constitute public records." (Opposition, p. 5, n. 6). Plaintiff also contends that vinelink.com is "NOT" part of the SC SAVIN government service. (Opposition, p. 9).

Both of Plaintiff's arguments fail – as can be determined from materials available to the Court at this dismissal stage of the case.

That the vinelink.com webpages are part of the SC SAVIN government service, and thus are public/government records or records of official government actions, can be determined simply by reviewing the applicable pages themselves. The SC SAVIN home page (savin.sc.gov), Exhibit 1 to Defendants' Motion to Dismiss (ECF 6-2) reads as follows:

> SC SAVIN is a free service, available 24 hours a day in both English and Spanish. *The service is powered by VINE, Victim Information and Notification Everyday.* SC SAVIN provides information and notifications regarding offenders. Crime victims, law enforcement officers, and concerned citizens are welcome to *use the system to search for an offender* or register for notifications *by*
>
> *   Telephone at 1.866.SCSAVIN (1.866.727.2846) or
> *   *Go to the VINELink website* at https://www.vinelink.com/vinelink/initMap.do and click on South Carolina.

(Exhibit 1 to Motion to Dismiss, ECF 6-2 (emphasis added).)

Thus, the SC SAVIN website makes clear that the vinelink.com webpages *are* part of the SC SAVIN service – and in fact the whole SC SAVIN service is "powered by VINE."

This inclusion of the South Carolina vinelink.com pages in the SC SAVIN government service is further evidenced by the applicable vinelink.com pages themselves – Exhibits 3-7 of Defendants' Motion to Dismiss (ECF 6-4 through 6-8) – some of which carry the SC SAVIN logo (Exhibit 3, ECF 6-4) and all of which prominently display the words "South Carolina SAVIN" or "South Carolina Statewide SAVIN" near the top. Since the vinelink.com webpages are explicitly part of the SC SAVIN government service, the information posted on them is a government record or a record of official government action and is thus covered by the "fair report" privilege.[3]

Moreover, even if Vinelink is merely a government contractor, as Plaintiff contends in his Opposition (ECF 9, p. 9[4]), the Fourth Circuit has held that media reports of governmental actions

---

[3] The wording of the savin.sc.gov and vinelink.com webpages in the present case also serves to distinguish the present case from Plaintiff's arguments that vinelink.com is no different from Facebook or Twitter if a government website provided a link to it (Opposition, p. 11) and from the Appriss cases cited by Plaintiff on page 9 of the Opposition.

[4] Defendants do not concede the applicability of the cases cited by Plaintiff. In particular, Plaintiff's reliance on Laccinole v. Appriss to support Plaintiff's factual assertions about vinelink.com are improper because (i) Laccinole doesn't reference vinelink.com; (ii) Laccinole is about a different issue (whether Appriss is a common carrier under the TCPA); and (iii) Laccinole was decided on a motion to dismiss, and the court merely accepted Laccinole's factual

by government contractors are still protected by the "fair report" privilege. Specifically, in Reuber v. Food Chemical News, 925 F.2d 703 (4th Cir. 1991), the Fourth Circuit addressed a situation in which a Reuters news story re-published allegations made in a reprimand letter from an employee of the Frederick Cancer Research Center (FCRC), a business operated by Litton Bionetics – which was a private company that was under contract with the National Cancer Institute (NCI), a public agency. Id. at 706-707, 713. In that case, the plaintiff argued that "the reprimand letter constitutes the actions of private entities, Hanna [the plaintiff's supervisor] and FCRC, rather than governmental entities;" but the Fourth Circuit held that, "on the contrary, the letter does qualify as official action for purposes of a fair report privilege." Id. at 713. Accordingly, even if the content of the vinelink.com webpages at issue is provided by a government contractor, not the government agency itself, such a distinction is without a difference – and the "fair report" privilege still applies.

Finally, as noted recently by the courts of the District of Columbia, independent third-party websites like Twitter can also be records of official government actions – even if those websites are not owned by the government or government contractors. See, James Madison Project v. DOJ, 302 F. Supp. 3d 12, 24 (D.D.C. 2018) (stating that President Trump's "tweets" on Twitter are "official statements of the President of the United States" regardless of the fact that they are on Twitter). The "fair report" privilege protects the news media not only when republishing information in government records, but also when publishing information originally based on government actions, statements or operations. Reuber v. Food Chemical News, Inc.,

---

allegations for purposes of deciding the motion. Laccinole v. Appriss, 453 F. Supp. 3d 499, 502-504 (D.R.I. 2020). The court noted, in fact, that "whereas Laccinole asserts that Appriss 'runs a victim notification serve,' Compl. ¶ 2, the [doc.ri.gov] webpages [of which the court took judicial notice] state that 'RI-VINE' is 'provided' by R.I. D.O.C. and is 'run[]' by an individual in its Office of Victim Services." Id. at 503, n. 3.

925 F.2d 703, 712 (4th Cir. 1991); Cobin v. Hearst-Argyle Television, Inc., 561 F. Supp. 2d 546, 550 (D.S.C. 2008); Howell v. Enter. Publ'g Co., LLC, 455 Mass. 641, 657-660, 920 N.E.2d 1, 18-21 (Mass. 2010). Thus, the privilege would apply regardless of where the photo of Plaintiff is posted by the government official or agency – even if it had been posted on Twitter.

**2.     Plaintiff's Arguments Against Taking Judicial Notice of the Postings on Vinelink.com also Fail**

Plaintiff's arguments that the Court cannot take judicial notice of materials posted on vinelink.com fail because precedent shows that numerous courts, including the District of South Carolina, have already taken judicial notice of content on vinelink.com as a record of government information – including details of detentions, alleged crimes and personal details about defendants. See, e.g., Roberts v. Lewis, No. 2:17-cv-453-RMG-MGB, 2017 U.S. Dist. LEXIS 175097, *9 n.4 (D.S.C. Sep. 25, 2017), pet. dismissed, 2017 U.S. Dist. LEXIS 175684 (D.S.C. Oct. 20, 2017) (citing vinelink.com as verification that a party is incarcerated); Stout v. Duall, No. 5:15-CT-3078-BO, 2015 U.S. Dist. LEXIS 119241, at *1 (E.D.N.C. Sep. 7, 2015) (same). See also, Plain Law v. Pierce, No. 19-924 (MN), 2020 U.S. Dist. LEXIS 216800, at *5 n.3 (D. Del. Nov. 19, 2020) (using vinelink.com to determine detainee's release date); Loyden v. Vannoy, 2020 U.S. Dist. LEXIS 221153, at *4 (W.D. La. Nov. 5, 2020) (using vinelink.com to determine detainee's age).

Courts also regularly take judicial notice of news articles, press releases, stock prices, and other published information, even if it is not a government record. See, e.g., Patel v. Parnes, 253 F.R.D. 531, 547-551 (C.D. Cal. 2008).

Accordingly, this Court can and should take judicial notice of the vinelink.com webpages attached to Defendants' Motion to Dismiss.

### 3. Dismissal Can and Should Be Granted on "Fair Report" Grounds Without Additional Foundational Testimony

Dismissal is regularly granted in "fair report" cases based solely on the complaint, matters incorporated by reference into the complaint, and matters of which the court takes judicial notice.  See, e.g., Cobin v. Hearst-Argyle Television, Inc., 561 F. Supp. 2d 546 (D.S.C. 2008) (no additional foundational testimony required).

Plaintiff seeks to avoid dismissal by claiming a need for additional foundational testimony concerning how Defendants "sourced Plaintiff's photograph from VINE." (Opposition, p. 5.)  Case law indicates, however, that such an inquiry is "immaterial" to a determination of fair report. Medico v. Time, 643 F.2d 134, 147 (3rd Cir. 1981), cert. den'd., 454 U.S. 836 (1981) ("[h]ow a reporter gathers his information concerning a [government action] is immaterial provided his story is a fair and substantially accurate portrayal of the [government action] in question").  More specifically, in Medico, the plaintiff argued that "Time [magazine] could avail itself of the fair report privilege only if it actually based its article on the FBI materials; if [Time's] report reflects the contents of the official materials *merely by coincidence*, the privilege does not attach." Id. at 146 (emphasis added).  But the Third Circuit explicitly rejected this argument, holding to the contrary that "how Time magazine obtained its knowledge of the FBI materials is irrelevant … the article is privileged as a fair and accurate summary of the FBI materials." Id. at 146-147.

Applying Medico, all that matters in the present case is that (i) the photo of Plaintiff was taken or posted by a government official or appeared in government records and (ii) the Defendant news organizations fairly and accurately portrayed the photo as it appeared in such records/posting; but it is irrelevant how the photo made its way to the Defendants (and thus foundational testimony on this issue is unnecessary).  Medico, supra, at 146-147.  Accordingly,

in the present case, the fact that the incorrect photograph is (was) posted in the SC SAVIN / vinelink.com public records should be enough – as such public records may be incorporated by reference into the Complaint or added to the case by judicial notice.  Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007) ("Courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.")

Moreover, Plaintiff was aware of the incorrect SC SAVIN / vinelink.com posting of his photograph prior to filing this lawsuit and has not alleged (and cannot allege) that the photo was *not* posted there.  Protracted discovery beyond the dismissal stage of this case is unnecessary. "Because the threat of protracted litigation could have a chilling effect upon constitutionally protected rights of free speech, prompt resolution of defamation actions, by summary judgment or motion to dismiss, is appropriate."  Barnett v. Denver Publ'g Co., 36 P.3d 145, 147 (Colo. Ct. App. 2001), accord, Brokers' Choice of Am., Inc. v. NBC Universal, Inc., 138 F. Supp. 3d 1191, 1199 (D. Colo. 2015).

This case can and should be dismissed without entering the expensive "discovery" phase of the case.

**4.     The Fair Report Privilege Applies Because Plaintiff Has Not Sufficiently Alleged – and Cannot Show – That Defendants Acted with "Actual Malice."**

In his Opposition to the Motion to Dismiss, Plaintiff proscribes a limitation on the fair report privilege: that the publisher loses the privilege for republishing an item with "actual malice," that is, knowledge of falsity or reckless disregard for the truth.  (Opposition, p. 10.)

While such limitation is not necessarily applicable in "fair report" cases,[5] and Defendants do not concede it is here, the limitation does not prevent dismissal in the present case in any event. Here, Defendants merely republished information from government documents,[6] including an erroneous photo that was included in such documents. Plaintiff has no basis for his bald assertions that Defendant acted with actual malice without any assertion that the photo was not contained in the SC SAVIN / vinelink.com records or was published by Defendants with knowledge that the photo was not of Demarcus Blocker, the detainee identified in the records. (See, Complaint (ECF 1-1), ¶¶ 32, 41, 51.) Plaintiff's allegations, even if true, are inadequate to avoid dismissal on the grounds of the fair report privilege.

5. **Plaintiff's Remaining Claims Are Derivative of His Insufficient Defamation Claims, and Should Also Be Dismissed Under "Fair Report"**

In his Opposition, Plaintiff fails to address any of the authorities cited in Defendants' Motion (see ECF 6-1, pp. 12-14) that prohibit an "end run" round around Defendants' First Amendment defamation defenses by re-characterizing the defamation claims as alternative state law claims. Rather, Plaintiff merely includes a footnote concerning election of remedies. (Opposition, p. 14, n. 9.) However, as the cases cited by Defendants repeatedly hold, Plaintiff

---

[5] See, e.g., Restatement (Second) of Torts, § 611 cmt. a (1977) (emphasis added):

> The privilege of publication of reports of defamatory statements in this section is somewhat broader in its scope than the [other defamation] conditional privileges…. *The privilege exists even though the publisher himself does not believe the defamatory words he reports to be true and even when he knows them to be false.* Abuse of the privilege takes place, therefore, when the publisher does not give a fair and accurate report of the proceeding.

[6] As referenced in the portion of Defendants' news article attached as Exhibit A to Plaintiff's Complaint filed in this action (ECF 1-1, p. 16), the remaining substantive information in Defendants' news articles at issue in this case came from a press release issued by the South Carolina Attorney General's Office. Attached as Exhibit A hereto is a copy of such press release. Defendants request that the Court take judicial notice of this press release.

cannot use alternate state law claims "to avoid the strict requirements for establishing a libel or defamation claim." Cohen v. Cowles Media Co., 501 U.S. 663, 670 (1991). This includes attempts to use alternate claims to circumnavigate the "fair report" defense. Yohe v. Nugent, 321 F.3d 35, 44 (1st Cir. 2003) ("[A] plaintiff cannot evade the protections of the fair report privilege merely by re-labeling his claim."); Cruse v. Frabrizio, 2014 U.S. Dist. LEXIS 90997, at *22 (S.D.W. Va. 2014 (magistrate)) ("to allow [plaintiff] to circumvent the protections of the fair report privilege simply by alleging intentional infliction of emotional distress would defeat the purpose of the privilege"), adopted, Cruse v. Frabrizio, No. 3:13-18768, 2014 U.S. Dist. LEXIS 90107 (S.D.W. Va. July 2, 2014).

In short, Plaintiff cannot make an "end run" around the "fair report" privilege and Defendants' other First Amendment protections by re-casting his defamation claims as other torts. Accordingly, all of Plaintiff's non-defamation causes of action should be dismissed pursuant to the "fair report" privilege along with his defamation claims.

**6.    Plaintiff's Claims for "Outrage," "Wrongful Publication of Private Affairs," "Wrongful Appropriation of Personality" and "False Light" Still Fail to Allege Sufficient Factual Support to State Viable Causes of Action and Must be Dismissed Regardless of the Outcome of Defendants' "Fair Report" Argument**

In addition to the fact that all of Plaintiff's non-defamation claims should be dismissed under the "fair report" privilege, Plaintiff's claims for "Outrage," "Wrongful Publication of Private Affairs," "Wrongful Appropriation of Personality" and "False Light" should also be dismissed for the independent reason that Plaintiff has not and cannot state facts sufficient to state viable causes of action for such claims. Defendants covered this issue in their Motion brief (ECF 6-1, pp. 14-18), and nothing in Plaintiff's Opposition brief provides a viable counter to Defendants' arguments. Nonetheless, Defendants briefly address each of these issues in further

detail below.[7]

      **a.    Outrage**

Plaintiff's Complaint does not (and cannot) allege any prior knowledge by Defendants that the photograph of Plaintiff appearing in the SC SAVIN / Vinelink system was anyone other than Demarcus Blocker. Nor can Plaintiff allege that Defendants had any motive – let alone intent – to inflict emotional distress upon him. Finally, even if true, none of Plaintiff's allegations concerning the actions by Defendants relating to how they obtained the photograph and posted it in their news stories rises to the level of "conduct [that] was so 'extreme and outrageous' as to exceed 'all possible bounds of decency' and must be regarded as atrocious, and utterly intolerable in a civilized community.'" Hanson v. Scalise Builders of South Carolina, 374 S.C. 352, 356, 650 S.E.2d 68, 70 (2007) (cited as an element of "outrage" by Plaintiff on page 14 of his Opposition brief). This is especially true where, as here, the remaining portions of Defendants' news stories at issue were also essentially a republication of a government record (the press release issued by the South Carolina Attorney General's office attached as Exhibit A hereto).[8]

Accordingly, even if this Court does not dismiss Plaintiff's claims under the "fair report" privilege, Plaintiff's "outrage" cause of action must be dismissed without leave to amend.

---

[7] Defendants' failure to address in this Reply brief any arguments raised in Plaintiff's Opposition brief should not be seen as an admission of the validity of Plaintiff's arguments. Rather, it should be understood that Defendants feel that their arguments in their Motion brief (ECF 6-1) sufficiently cover the topic and need no supplementation. Defendants may also address any remaining issues at oral argument.

[8] As noted above, Defendants request that the Court take judicial notice of this press release, which is referenced in the exhibits attached to Plaintiff's Complaint (ECF 1-1, p. 16) and therefore can be judicially noticed for purposes of this Motion to Dismiss.

### b.     Wrongful Publication of Private Affairs

Plaintiff does not (and cannot) allege facts indicating that his face as depicted in the photo at issue is a private matter.  Plaintiff fails to allege (and cannot truthfully allege) that his face has never been seen in public.  As noted in the Restatement:

> There is no liability when the defendant merely gives further publicity to information about the plaintiff that is already public.  Thus there is no liability for giving publicity to facts about the plaintiff's life that are matters of public record, such as the date of his birth, the fact of his marriage, his military record, the fact that he is admitted to the practice of medicine or is licensed to drive a taxicab, or the pleadings that he has filed in a lawsuit.

Restatement (Second) of Torts, § 652D, cmt. b (1977).

Plaintiff's face has already appeared in public.  The photo at issue shows nothing more than what was already publicly seen.  Accordingly, it cannot be a private matter.

Moreover, the photo of Plaintiff's face was already posted to a publicly available website, vinelink.com, before it was obtained by Defendants.  So, it cannot be a private matter.[9]

Because "[t]he law does not recognize a right of privacy in connection with that which is inherently a public matter," Meetze v. Associated Press, 230 S.C. 330, 337, 95 S.E.2d 606, 609 (1956), Plaintiff's claim for wrongful publication of private affairs must be dismissed with prejudice.

### c.     Wrongful Appropriation of Personality

Plaintiff's Opposition brief fails to address the fact that it is well settled law that use of a person's image for news coverage is not actionable for wrongful appropriation of personality.  If the news media had to get permission to use names or photos of all criminals, politicians, celebrities or other people who appear in news articles prior to publishing the articles about

---

[9] In addition, the photo is likely to be a mugshot, which also removes any privacy claim Plaintiff might have in the photo.  Frith v. Associated Press, 176 F. Supp. 671, 676 (E.D.S.C. 1959).

them, then there would be almost no news articles. Accordingly, torts like "wrongful appropriation of personality" (and its "sister" cause of action for violation of a person's "right of publicity") have been limited to instances where the use of the person's image was in advertising or merchandising (commercial use) – not news (editorial use) or even advertisements for news. See, e.g., Restatement (Second) of Torts, § 652C, cmt. (d) (1977) ("The fact that the defendant is engaged in the business of publication, for example of a newspaper, out of which he makes or seeks to make a profit, is not enough to make the incidental publication a commercial use of the name or likeness. Thus a newspaper . . . does not become liable under the rule stated in this Section to every person whose name or likeness it publishes."); Martin v. Hearst Corp., 777 F.3d 546, 551-52 (2d Cir. 2015) (plaintiff's "claim for invasion of privacy by appropriation fails because a newspaper does not improperly appropriate an individual's name or likeness merely by publishing an article that brings the individual's activities before the public"); Bosley v. WildWetT.com, 310 F. Supp. 2d 914, 923 (N.D. Ohio 2004) (collecting cases); Castro v. NYT Television, 370 N.J. Super. 282, 297, 851 A.2d 88, 97 (N.J. Super. Ct. App. Div. 2004) ("defendants would be liable for the tort of misappropriation of likeness only if defendant's use of plaintiff's likeness was for a predominantly commercial purpose, i.e., if defendant was seeking to capitalize on [plaintiff's] likeness for purposes *other than the dissemination of news or information*" (emphasis added)); Jacova v. Southern Radio & Television Co., 83 So. 2d 34, 37 (Fla. 1955); Howell v. New York Post Company, Inc., 81 N.Y.2d 115, 124, 612 N.E.2d 699, 596 N.Y.S.2d 350 (N.Y. 1993); see also, Restatement (Third) of Unfair Competition, § 47, cmt. c (1995) ("the use of a person's name or likeness in news reporting, whether in newspapers, magazines, or broadcast news, does not infringe the right of publicity").

    The Complaint alleges no more than that Plaintiff's photo was used by Defendants in

their news coverage of the arrest and detention of Demarcus Tavon Blocker – and cannot plausibly allege commercial use outside of Defendants' news coverage.  Accordingly, Plaintiff's claim for wrongful appropriation of personality must be dismissed with prejudice.

### d.      False Light

Plaintiff admits that false light has not been recognized as an actionable tort by South Carolina state courts.  (Opposition, p. 19.)  Accordingly, this federal court sitting in diversity should decline to create a new South Carolina state law claim at this time, and should dismiss Plaintiff's cause of action for false light.

## CONCLUSION

As set forth above, this case is ripe for dismissal.  There is no need to prolong the case by extending it into the expensive "discovery" phase.  Plaintiff's defamation claims should be dismissed under the "fair report" privilege, just as the plaintiff's claims in this District's Cobin v Hearst-Argyle case were dismissed.  Plaintiff's non-defamation claims merely re-characterize his defamation claims, and thus should be dismissed under "fair report" as well.  And Plaintiff's "outrage," "wrongful publication of private affairs" and "wrongful appropriation" claims should also be dismissed for the independent reason that Plaintiff has not pled and cannot plead plausible facts to support them.  Finally, Plaintiff's "false light" claim fails not only because it is an attempted "end run" around the "fair report" privilege, but also because South Carolina does not recognize this cause of action independently from defamation.  Since Plaintiff cannot cure any of these defects by re-pleading, Defendants respectfully request that Plaintiff's claims and his entire Complaint be dismissed with prejudice.

 

                                                          Respectfully submitted,

                                                          FENNO LAW FIRM, LLC

                                                          By: *s/Edward Fenno*
                                                          Edward T. Fenno (Fed. ID No. 7498)
                                                          1459 Stuart Engals Blvd., Suite 202
                                                          Mt. Pleasant, South Carolina 29464
                                                          Ph: (843) 720-3747
                                                          Fax: (843) 614-5093
                                                          Email: efenno@fennolaw.com

                                                          ATTORNEY FOR DEFENDANTS
                                                          NEXSTAR BROADCASTING INC. and
                                                          NEXSTAR MEDIA GROUP, INC.

December 22, 2020
Mt. Pleasant, South Carolina

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENWOOD DIVISION

| | |
|---|---|
| DOUGLAS TURNER,<br><br>   Plaintiff,<br><br>v.<br><br>NEXSTAR BROADCASTING, INC.,<br>NEXSTAR MEDIA GROUP, INC., and<br>JOHN/JANE DOE,<br><br>   Defendants. | ) Civil Action No.: 8:20-cv-04115-BHH<br>)<br>)<br>)<br>)<br>)<br>)  **CERTIFICATE OF SERVICE**<br>)<br>)<br>)<br>)<br>)<br>) |

I hereby certify that on December 22, 2020, I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the District of South Carolina by using the CM/ECF system. I certify that all participants in the case, including the ones listed below, are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

 David R. Price, Jr., Esq.
 Samuel B. Tooker, Esq.
 DAVID R. PRICE, JR., P.A.
 318 West Stone Avenue
 Post Office Box 2446
 Greenville, South Carolina 29602-2446
 David@GreenvilleLegal.com
 Sam@GreenvilleLegal.com
 *Attorneys for the Plaintiff*

 December 22, 2020       *s/Edward Fenno*
 Mt. Pleasant, South Carolina   Edward Fenno