IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENWOOD DIVISION

| | | |
|---|---|---|
| DOUGLAS TURNER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil No.:  8:20-CV-04115-JD |
| | ) | |
| NEXSTAR BROADCASTING, INC., | ) | PLAINTIFF'S REPLY TO |
| NEXSTAR MEDIA GROUP, INC., and | ) | DEFENDANTS' MOTION IN |
| JOHN/JANE DOE, | ) | OPPOSITION TO PLAINTIFF'S |
| | ) | MOTION |
| Defendants. | ) | |
| | ) | |

Plaintiff, by and through his undersigned counsel, and pursuant to the applicable Rules of Civil Procedure, respectfully submits this brief Reply to Defendants' memorandum in opposition to Plaintiff's Motion for Expedited Jurisdictional Discovery.

## ARGUMENT

### Plaintiff's Motion is not Premature

Defendants miss the mark when they argue Plaintiff's motion for expedited jurisdictional discovery is premature while Defendants' motion to dismiss remains pending.

Defendants removed Plaintiff's complaint from South Carolina Common Pleas because complete diversity exists between Plaintiff and Defendants NBI and NMGI.  While Plaintiff alleged that Defendant Doe was a South Carolina resident, until Defendant Doe can be identified, Defendant Doe's citizenship is not to be considered in determining whether complete diversity exists.

1

After removing Plaintiff's Complaint, Defendants moved to dismiss the action. Defendants' arguments in their Motion to Dismiss are based primarily on Fourth Circuit cases, which would constitute persuasive rather than mandatory caselaw in South Carolina Common Pleas (ECF No. 6).  Defendants want this Court to adjudge that Plaintiff's Complaint fails to state a claim for which relief can be granted based on Federal jurisprudence when in all likelihood this Court does not have jurisdiction to hear the matter.  Defendants hope to avoid analysis of Defendants' Motion in State Court because the dearth of mandatory caselaw supporting Defendants' positions undercuts the vast majority of Defendants' arguments in their Motion to Dismiss.  If forced to rely merely on persuasive cases and South Carolina's "novel issue" standard, which is applied in motions to dismiss, Defendants' are without any good faith arguments sufficient to even merit the filing of a Motion to Dismiss in Common Pleas.

Therefore, it is now, more than ever, appropriate to identify the name and residence of Defendant Doe, so that this Court can avoid applying Federal jurisprudence to a case where such caselaw would more appropriately be considered dicta.

### **Plaintiff's Motion Encourages, rather than Discourages, Judicial Economy**

Defendants argue that the limited discovery proposed by Plaintiff would be burdensome on Defendants and the Court system.  This contention is false.  If anything, the limited discovery proposed by Plaintiff would ensure that this case is adjudged in the correct jurisdiction and guarantees that a party or parties do not bring successive motions in State and Federal court that address the same issues.  If this Court wants to ensure that our Government's limited resources are appropriated efficiently, then it will ensure that the parties address the issue of the Doe Defendant's identity and residence to guarantee that any motions in this case are adjudicated once and in the appropriate jurisdiction.

## **The Doctrine of Respondeat Superior Does not Obviate the Need to Identify the Doe Defendant**

Defendants correctly identify the doctrine of respondeat superior as one of the means by which Plaintiff has sought to recover damages from Defendants NBI and NGMI.[1]  However, Defendants incorrectly interpret the doctrine of respondeat superior as obviating the need to name Defendant Doe as a Defendant in the present matter.

While our putative jury may conclude that Defendants NBI and NGMI were responsible for the negligent acts of Defendant Doe, such a finding would not absolve Defendant Doe of responsibility to Plaintiff if the jury were to have similarly found that Defendant Doe committed torts for which Doe was liable to Plaintiff.  Plaintiff could then recover damages from Defendant Doe directly or from Defendants NBI and NGMI who could then indemnify themselves against Defendant Doe.  Sky City Stores v. Gregg Sec. Servs., 276 S.C. 556, 280 S.E.2d 807 (1981).

The real danger to a plaintiff in a case where an employer-defendant's negligence is based on a master-servant theory of liability is that a jury could find against the employer but not against the employee, which would result in the award against the employer being vacated. Brown v. National Oil Co., 233 S.C. 345, 348 105 S.E.2d 81 (1958).  Similarly, a jury could find that a defendant-employee acted negligently and award damages to a Plaintiff while concluding that the defendant-employee was not operating in the course and scope of her employment, thus absolving the defendant-employer of civil liability for the acts of the servant.

However, even if Defendants acknowledge that Defendant Doe was acting in the course and scope of Doe's employment when Defendant Doe published the defamatory story central to this case, Plaintiff cannot be forced to only pursue the employer-Defendants and can pursue

---

[1] Plaintiff also alleges various theories of liability related to Defendants' negligence in hiring, training, and supervising Defendant Doe.

claims against any tortfeasor whose conduct caused the damages suffered by Plaintiff. It is basic plaintiff's practice that any entity who could be responsible for a plaintiff's damages is identified and included in any litigation related to that plaintiff's claims for damages. Different parties may have different appetites for risk and different desires to litigate. Therefore, the best outcome for a plaintiff is often achieved by naming every person or entity potentially liable to a plaintiff for that plaintiff's injuries. Defendants cannot preclude Plaintiff from naming a Defendant merely because Plaintiff could recover for his damages from the already-named Defendants.

### Either Under the Preliminary Injunction Test or Good Cause Test Expedited Discovery is Appropriate

Defendants correctly identify the two standards endorsed by our courts related to the necessity of expedited discovery. Given that Plaintiff has not applied for injunctive relief[2], temporary or otherwise, Plaintiff believes that the preliminary injunction standard endorsed by the Eastern District of Virginia in ForceX is unnecessarily restrictive, particularly given the wide-latitude afforded trial courts in determining discovery motions (Trial courts have "wide latitude in controlling discovery and … rulings will not be overturned absent a showing of a clear abuse of discretion." Rowland v. Am. Gen. Fin. , Inc., 340 F.3d 187, 195 (4th Cir. 2003)).

However, even assuming that Defendants are correct, and the preliminary injunction standard is appropriate in this case, the circumstances presented by this case are such that Plaintiff's request satisfies both the "success on the merits" prong and the "irreparable harm" prong outlined by the court in ForceX.

---

[2] It is important to note that the Plaintiff in ForceX had filed a Motion for temporary Restraining Order, Expedited Discovery and Preliminary Injunction. Force X, Inc. v. Tech. Fusion, LLC, No. 4:11CV88, 2011 WL 2560110, at *2 (E.D. Va. June 27, 2011). So, while the court in ForceX elected to utilize the preliminary injunction standard in that case, the application of that rule was logically consistent with the facts presented and the relief requested by the Plaintiff. Here, the question regarding the necessity of expedited discovery relates directly to the jurisdiction of this court and the propriety of hearing motions of any kind, including Defendants' 12(b)(6) motion when the action, in all likelihood, should be remanded to Common Pleas in Greenwood County upon identification of Defendant Doe.

4

**Success on the Merits**

Defendants again incorrectly assert that they are immune from civil liability because of the fair report privilege. As has already been discussed in this case ad nauseum, the fair report privilege applies when the press publishes a statement or statements made by the government. Here, the Defendants claim[3] that they, without authorization, republished materials t maintained by a for-profit corporation, which defamed Plaintiff. Furthermore, as is acknowledged in the caselaw cited by Defendants in their Memorandum of Law in Support of Motion to Dismiss (ECF 6-1) and Plaintiff in his Memorandum in Opposition (ECF 9), Defendants are only entitled to protection by the fair report privilege if Defendants did not abuse the privilege.

In this case, even if Defendants' claims regarding the function of the third party from whom Defendants claim they pilfered the image of Plaintiff are presumed to be true and the third party is presumed to be governmental despite its status as a for-profit corporation, the same webpages that Defendants cite as the basis for the alleged privilege in this case state explicitly that they did "not warrant or guarantee the accuracy or completeness of any information," "strictly prohibited" "[a]ny commercial use of [the] information," and prohibited persons and entities from "collect[ing], sell[ing], offer[ing] for sale, modify[ing], reproduc[ing], publicly perform[ing], import[ing], distribut[ing], retransmit[ting] or otherwise us[ing] the content of [the the] website in any way, without the express written permission of Apriss." (ECF 6-3, 6-5, 6-6, 6-7, 6-8). In other words, Defendants have represented that they republished materials in a commercial forum that were marked "you can't trust this information," "do not republish," and "do not use commercially."

---

[3] Again, this are representations made by Defendants in a motion to dismiss. There has been no testimony, affidavits, reports or other documents evidencing these facts. These are merely the representations by Defendants' counsel in his motions and memoranda.

5

Certainly, the republication of materials from an entity that expressly warned that the materials were not accurate and prohibited the use, redistribution, modification, or distribution of the materials found on the entity's website establishes factual circumstances, which a reasonable jury could conclude constitute abuse of a privilege were a privilege to exists.  Furthermore, given that the Defendants' publication added factual materials to a photographic depiction of Plaintiff, there exists a factual question as to whether the Defendants "choice of words other than those used" by the third-party for-profit corporation "was an abuse of the privilege."  <u>West v. Morehead</u>, 396 S.C. 1, 8, 720 S.E.2d 495, 499 (Ct. App. 2011).

While Plaintiff believes Defendants' arguments regarding the existence of the fair report privilege are specious at best (see: ECF 9 for Plaintiff's analysis of Defendants' fair report claims) "the question whether [a qualified] privilege has been abused is one for the jury."  <u>Id</u>. Therefore, given the significance of the harm occasioned by Defendants' defamatory publications and the factually questionable claims for privilege asserted by Defendants, there should be little question that Plaintiff's case will likely succeed on the merits.

## **Irreparable Harm**

Plaintiff will also suffer irreparable harm if forced to litigate his case in Federal Court for months until the identity of the Doe Defendant can be ascertained and the case properly remanded.

Because the irreparable harm standard is a byproduct of the preliminary injunction standard, the discussion of the standard revolves around cases wherein there are claims that continued conduct will cause continued harm.  In this case, as Plaintiff is not seeking redress for unabated conduct, Plaintiff contends that unnecessary litigation in Federal court that will likely be duplicated in State court will constitute an irreparable injury entitling Plaintiff to preliminary

6

discovery to avoid unnecessary litigation and costs associated with a case that will, ultimately, be remanded to State court.

Furthermore, this Court, the Federal judicial system, and U.S. taxpayers suffer irreparable injury when protracted litigation is forced upon the District Court in circumstances wherein the District Court will not likely retain jurisdiction over the litigation. Such tactics tax our already strained judicial system and keep the Court from hearing those matters properly before it.

## CONCLUSION

Based on the foregoing, Plaintiff contends that Defendants' objections to Plaintiff's request for expedited discovery should be overruled and this Honorable Court should issue an order directing Defendants to respond fully to Plaintiff's proposed interrogatories within fifteen days.

Respectfully submitted,

s/ Sam Tooker
SAMUEL BARTON TOOKER
Federal Bar No.: 12162
318 West Stone Ave.
Greenville, South Carolina 29609
Telephone: (864) 271-2636
sam@greenvillelegal.com
Attorney for Plaintiff
DOUGLAS TURNER

Greenville, South Carolina
March 12, 2021